678 So.2d 522 (1996)
Kathleen O. HANSON, Appellant,
v.
Brian R. HANSON, Appellee.
No. 95-1384.
District Court of Appeal of Florida, Fifth District.
August 30, 1996.
*523 Nancy N. Nowlis, Jacksonville, for Appellant.
Catherine G. Swain, P.A. of Dunn, Abraham & Swain, Daytona Beach, for Appellee.
THOMPSON, Judge.
Kathleen C. Hanson (the former wife) appeals the final judgment of dissolution of marriage except those parts dissolving the marriage and to which the parties stipulated. We reverse because the trial judge engaged in an hour-long ex parte communication with the attorney for Brian R. Hanson (the former husband) regarding the attorney's drafting of the final judgment.[1]
At the conclusion of the trial in this cause, the judge reserved ruling and made no findings of fact. The judge stated he would render a judgment within 30 days. Some days later, the judge's judicial assistant telephoned the former husband's attorney requesting that she meet with the judge later that day. The judge and the attorney spent an hour discussing the final judgment that the attorney was to prepare. According to the former husband, this was an "instructional" meeting. The former wife's trial attorney received no notice of this meeting and did not attend. The former husband's attorney returned to her office and began preparing a proposed final judgment, and faxed at least one draft to the former husband. The former husband, a lawyer who practiced marital law in the jurisdiction, responded later that he reviewed the draft only for mistakes in grammar and legal descriptions. He acknowledged that one provision contained in the proposed final judgment had not been ordered by the trial judge, but it is not clear from the record whether this was the only provision in the proposed final judgment that the court did not order. The judge stated in a letter to the former wife that he signed the judgment because it comported with his findings.
In In re Inquiry Concerning a Judge: Clayton, 504 So.2d 394, 395 (Fla. 1987), the court stated:
The Code of Judicial Conduct in Canon 3(A)(4) states that "[a] judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding." This canon implements a fundamental requirement for all judicial proceedings under our form of government. Except under limited circumstances, no party should be allowed the advantage of presenting matters to or having matters decided by the judge without notice to all other interested parties.
The clear intent of this canon is to exclude all ex parte communications except when expressly authorized by statutes or rules. Id.
Nothing is more dangerous and destructive of the impartiality of the judiciary than a one-sided communication between a judge and a single litigant. Even the most vigilant and conscientious of judges may be subtly influenced by such contacts. No matter how pure the intent of the party who engages in such contacts, without the benefit of a reply, a judge is placed in the position of possibly receiving inaccurate information or being unduly swayed by unrebutted remarks about the other side's case. The other party should not have to bear the risk of factual oversights or inadvertent negative impressions that might easily be corrected by the chance to present counter arguments. *524 Rose v. State, 601 So.2d 1181, 1183 (Fla.1992) (noting that, in the past on some occasions, judges, on an ex parte basis, called only one party to direct that party to prepare an order for the judge's signature, and that the judiciary has come to realize that such a practice is fraught with danger and gives the appearance of impropriety). The most insidious result of ex parte communications is their effect on the appearance of the impartiality of the tribunal; the impartiality of the trial judge must be beyond question. Id.

Every litigant is entitled to nothing less than the cold neutrality of an impartial judge....
The exercise of any other policy tends to discredit the judiciary and shadow the administration of justice ... The attitude of the judge and the atmosphere of the court room should indeed be such that no matter what charge is lodged against a litigant or what cause he is called on to litigate, he can approach the bar with every assurance that he is in a forum where the judicial ermine is everything that it typifies, purity and justice. The guaranty of a fair and impartial trial can mean nothing less than this.
Id. (quoting State ex rel. Davis v. Parks, 141 Fla. 516, 519-20, 194 So. 613, 615 (1939)).
In Scull v. State, 569 So.2d 1251, 1252 (Fla.1990), the supreme court stated:
One of the most basic tenets of Florida law is the requirement that all proceedings affecting life, liberty, or property must be conducted according to due process. Art. I, § 9, Fla. Const. While we often have said that "due process" is capable of no precise definition, e.g. Gilmer v. Bird, 15 Fla. 410 (1875), there nevertheless are certain well-defined rights clearly subsumed within the meaning of the term.
The essence of due process is that fair notice and a reasonable opportunity to be heard must be given to interested parties before judgment is rendered. Tibbetts v. Olson, 91 Fla. 824, 108 So. 679 (1926). Due process envisions a law that hears before it condemns, proceeds upon inquiry, and renders judgment only after proper consideration of issues advanced by adversarial parties. State ex rel. Munch v. Davis, 143 Fla. 236, 244, 196 So. 491, 494 (1940). In this respect the term "due process" embodies a fundamental conception of fairness that derives ultimately from the natural rights of all individuals. See art. I, § 9, Fla. Const.
Here, the appearance of irregularity so permeates these proceedings as to justify suspicion of unfairness. This, we believe, is as much a violation of due process as actual bias would be. Accordingly, we must vacate the sentence and remand for another sentencing hearing in compliance with this opinion.
In Waldman v. Waldman, 520 So.2d 87, 89 n. 4 (Fla. 3d DCA), rev. denied, 531 So.2d 169 (Fla.1988), the court noted that:
At the conclusion of the proceeding and without indicating what its judgment would be, the trial court requested counsel for both parties to submit written final argument and orders. Thereafter, and without a hearing, the trial court adopted verbatim the final judgment drafted by counsel for Mrs. Waldman. We condemn this practice. We admonish the bench and the bar that, particularly in domestic relations cases, findings of fact and conclusions based thereon are of critical importance. "When an interested party is permitted to draft a judicial order without response by or notice to the opposing side, the temptation to overreach and exaggerate is overwhelming." Colony Square Co. v. Prudential Ins. Co. of America, 819 F.2d 272 (11th Cir.1987), [cert. denied, 485 U.S. 977, 108 S.Ct. 1271, 99 L.Ed.2d 482 (1988)]. The trial court's order is replete with "argumentative overdetailed partisan matter." Roberts v. Ross, 344 F.2d 747 (3d Cir. 1965). The better practice, indeed the preferred practice, is for the trial court to indicate on the record its findings and conclusions. "The reviewing court deserves the assurance that the trial court has come to grips with apparently irreconcilable conflicts in the evidence ... and has distilled therefrom true facts in the crucible of his conscience." Keystone Plastics, Inc. v. C & P Plastics, Inc., 506 F.2d 960 (5th Cir.1975). The parties to this action *525 are no less deserving of such assurances.[2] Notwithstanding Dr. Waldman's compelling argument that the trial court exercised no discretion, we will assume, without deciding, that it did, and, therefore, we address this case on the merits.
We hold that the appearance of impropriety so permeated the proceeding below as to justify a suspicion of unfairness, mandating reversal. Scull. Accordingly we reverse the final judgment except for the parts dissolving the marriage and the parts to which the parties stipulated. Upon remand, we suggest that the chief judge of the circuit request the chief justice to assign a senior judge to hear this case. See Fla. R. Jud. Admin. 2.030(a)(4)(C). By our count, at least five circuit judges have presided over this matter thus far. The wife has expressed concern that she has not been treated fairly because her husband regularly practices in the circuit where this has been tried. The assignment of a senior judge will assist in the prompt dispatch of the case and avoid any appearance of impropriety.
AFFIRMED in part; REVERSED in part; and REMANDED with directions.
GRIFFIN, J., concurs.
GOSHORN, J., concurs specially, with opinion.
GOSHORN, Judge, concurring specially.
I fully concur with Judge Thompson's opinion except the quotation of footnote 4 in Waldman v. Waldman, 520 So.2d 87, 89 n. 4 (Fla. 3d DCA), rev. denied, 531 So.2d 169 (Fla.1988), wherein the third district impliedly condemns the practice of asking both counsel to submit proposed orders. While criticism of the trial judge's action in Waldman was justified under the circumstances of that case, I do not want the trial judges of this state to think that they can no longer utilize the practice. There are cases and circumstances where the use of this procedure is justified and, indeed, beneficial to the administration of justice.
NOTES
[1] The former husband admitted the material facts in his response to the former wife's various post-trial motions.
[2] We note that the judgment in the instant case more closely resembles advocacy than it does disinterested fact-finding.