ROTHENBERG, J.

THE FACTUAL AND PROCEDURAL HISTORY

I. Background

Leon Cohen, Maurice Cohen, and Sonia Cohen (collectively, the “Cohens”) appeal from a final order granting CDR Créanees’ (the “Bank”) motion to strike the defendants’ pleadings and enter a default judgment based on fraud on the court (the “Motion to Strike”). Lea Cohen and thirty-four Florida corporations (the “Corporate Defendants”)[1] owned or controlled by the Cohens appeal from a final judgment and an order appointing a receiver that grants the Bank, as a default sanction, ownership and control of the Corporate Defendants’ real property. This Court consolidated the appeals for all appellate purposes. Based on the following, we reverse the default sanction with respect to Lea Cohen, and affirm it as to the remaining defendants.
The litigation below commenced when the Bank sued the defendants. The complaint alleges the Bank’s predecessor-in-interest, Société de Banque Occidentale, loaned money to Euro-American Lodging Corporation, a Cohen company, for the purposes of purchasing and renovating a New York City hotel. The loan was secured by the revenues generated by the hotel and' two mortgages on the hotel property, among other assets. The complaint alleges the Cohens diverted hotel revenues from the hotel, sold the hotel, kept the sale proceeds, hid the stolen money in offshore bearer share corporations[2] and Swiss bank accounts (collectively, the “Offshore Entities”), and ultimately used these funds to purchase and maintain several Florida properties owned by the Corporate Defendants (the “Florida Proper *1038 ties”).[3] In the complaint, the Bank sought to enjoin the transfer of the Florida Properties (count two), and to impose a constructive trust on them (count three).[4]

II. The Motion to Strike and Eviden-tiary Hearing

On August 13, 2010, the Bank filed its Motion to Strike, alleging the defendants schemed to defraud the trial court by submitting perjured deposition testimony, suborning and attempting to suborn perjury, and forging corporate documents, all in an effort to conceal the Cohens’ ownership interests in the Corporate Defendants and Offshore Entities. On October 1, 2010, the trial court commenced an evidentiary hearing on the Motion to Strike, and received evidence over a three-day period. After the hearing, the trial court concluded the defendants intended to defraud the Florida court, and struck their pleadings. Upon review of the case law and the voluminous record, we affirm in part, and reverse in part.

LEGAL ANALYSIS

I. The Trial Court Properly Struck the Cohens’ and the Corporate Defendants ’ Pleadings

A. The Case Law
The striking of a party’s pleadings “has long been an available and often favored remedy for a party’s misconduct in the litigation process.” Bertrand v. Belhomme, 892 So.2d 1150, 1152 (Fla. 3d DCA 2005). The rationale underlying the sanction is that “a party who has been guilty of fraud or misconduct in the prosecution or defense of a civil proceeding should not be permitted to continue to employ the very institution it has subverted to achieve her ends.” Id. (quoting Metro. Dade Cnty. v. Martinsen, 736 So.2d 794, 795 (Fla. 3d DCA 1999)). Of course, the dismissal of a party’s pleadings is a severe sanction, and thus should be administered only in the most egregious cases. Bertrand, 892 So.2d at 1152. As a result, an order striking pleadings for fraud upon the court is reviewed under a “narrowed” abuse of discretion standard. Williams v. Miami-Dade Cnty. Pub. Health Trust, 17 So.3d 859, 859 (Fla. 3d DCA 2009).
The proponent of a motion to strike pleadings must prove, by clear and convincing evidence, “that a party has sen-tiently set in motion some unconscionable scheme calculated to interfere with the judicial system’s ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party’s claim or defense.” Cox v. Burke, 706 So.2d 43, 46 (Fla. 5th DCA 1998) (quoting Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.1989)).
On the spectrum of sanctionable conduct, perjury is perhaps the most egregious. Indeed, “few crimes ... strike more viciously against the integrity of our system of justice than the crime of perjury.” Martinsen, 736 So.2d at 796 (Sorondo, J., concurring). Accordingly, Florida appellate courts have readily affirmed the dismissal of pleadings against a party that engages in perjury when that perjury permeates throughout the trial proceedings and is related to a party’s claim or defense. Babe Elias Builders Inc. v. Pernick, 765 So.2d 119, 120-21 (Fla. 3d DCA 2000) (affirming the trial court’s entry of default judgment where the defendant instructed his employees to prepare fraudulent in *1039 voices, suborned their perjury regarding the legitimacy of these fraudulent invoices, and testified falsely regarding these actions, holding that “where a party perpetrates fraud on the court which permeates the entire proceedings, dismissal of the entire case is proper”); see also Papadopoulos v. Cruise Ventures Three Corp., 974 So.2d 418, 419-20 (Fla. 3d DCA 2007) (“Papadopoulos has forfeited his right to seek redress for his claimed injuries based upon his material misrepresentations and omissions that go to the heart of his claims.”); Martinsen, 736 So.2d at 794-95 (remanding for dismissal of the plaintiffs case because her “untruthful sworn statements,” and her “misrepresentations and omissions ... went to the heart of her claim and subverted the integrity of the action”); Cox, 706 So.2d at 47; Mendez v. Blanco, 665 So.2d 1149, 1150 (Fla. 3d DCA 1996) (holding that the trial court did not abuse its discretion in dismissing the plaintiffs complaint where he “committed serious misconduct by repeatedly lying under oath during a deposition”); O'Vahey v. Miller, 644 So.2d 550, 551 (Fla. 3d DCA 1994) (holding that the plaintiffs repeated lies in discovery, uncovered only by the “assiduous efforts of opposing counsel,” “constituted such serious misconduct” that dismissal of the case was required).
B. The Trial Court Was Justified In Striking the Cohens’ and the Corporate Defendants’ Pleadings.
In striking the Cohens’ and the Corporate Defendants’ pleadings, the trial court made specific factual findings that the Cohens attempted to defraud the Florida trial court and conceal their ownership interests in the Offshore Entities and Corporate Defendants by: (1) producing fabricated corporate documents; (2) committing perjury in affidavits and depositions; and (3) suborning the perjury of material ■witnesses and providing them with scripts of lies to repeat under oath. As demonstrated below, these conclusions were supported by overwhelming clear and convincing evidence.
(i) The Cohens produced falsified and forged documents in the Florida litigation.
The record reflects that the Cohens fabricated evidence to prove the Florida Properties were purchased and maintained with “clean” funds from a “private lender,” Whitebury, rather than with money stolen from the Bank. Specifically, the Cohens created and produced a series of sham promissory notes reflecting that ALR and other Corporate Defendants borrowed nearly $60 million from Whitebury. At the hearing on the Motion to Strike, Mr. Ha-bib Levy, Maurice Cohen’s brother-in-law, testified that to conceal the Cohens’ ownership interest in Whitebury, the Cohens fabricated a “Whitebury Shareholder Affidavit,” forging Mr. Levy’s signature as the putative 100% owner of Whitebury, and falsely notarizing it as authentic. The record reflects that, in reality, Whitebury was Maurice Cohen’s “personal investment company.” Mr. Levy testified he neither owned Whitebury nor signed the White-bury documents, and “the first time [he] ever heard of Whitebury was when Mauricio was arrested.”
(ii) The Cohens perjured themselves in deposition testimony, and invited the Florida trial court to accept the perjured depositions.
The Bank also presented evidence establishing that the Cohens committed perjury. In July 2009, Maurice and Leon Cohen appeared for deposition in the related New York litigation, and denied possessing any ownership interest in the Offshore Entities and Corporate Defendants. Early in the Florida litigation, the Cohens filed a motion for a protective order, inviting the trial court to accept the perjured testimony in lieu of live testimony at a lis pendens *1040 bond hearing. As the Cohens intended, the perjured depositions were introduced into evidence without objection at this hearing.
At the hearing on the Motion to Strike, the Bank established the deposition testimony was false. Specifically, the Bank introduced recorded telephone calls between Maurice Cohen and his HSBC bankers, as well as an unproduced document the Bank independently obtained, in which Maurice Cohen and Leon Cohen acknowledged they were the beneficial owners of ALR. Significantly, although the trial court had issued at least three discovery orders[5] directing the defendants to reveal the identities of the beneficial owners of the Corporate Defendants, and to produce all documents relating thereto, the defendants claimed to have produced all unprivileged documents relating to the Corporate Defendants, did not produce this document, and repeatedly denied possessing any ownership interest in ALR or the other Corporate Defendants.
Additionally, in opposition to the Motion to Strike, the Cohens submitted perjured affidavits, in which they denied forging corporate documents, perjuring themselves during deposition testimony, and suborning the perjury of material witnesses.
(iii) The Cohens suborned and attempted to suborn the perjury of material witnesses, and the Corporate Defendants induced the false and ignorant testimony of their corporate representative, Sylvia Mergui.
An abundance of record evidence also reflects that the Cohens suborned and attempted to suborn the perjury of material witnesses, and induced the false and ignorant testimony of their corporate representative. Specifically, in a further attempt to conceal their ownership interests in the Offshore Entities, the Cohens designated Allegria Aich, Joelle Habib, Patricia Ben-harbon, and Robert Marabeouf as “corporate nominees” to act as the ostensible heads of the Offshore Entities. Of course, these “corporate nominees” were either relatives or friends of, or financially dependent upon, the Cohens. Thus, the Cohens maintained actual control over the Offshore Entities. Due to the designation of the “corporate nominees” as officers and directors of the Offshore Entities, the Bank scheduled them for deposition. As a result, the Cohens instructed the “corporate nominees” to lie under oath about the Cohens’ ownership interests in the Offshore Entities.
At the Motion to Strike, the Bank elicited testimony from Joelle Habib and Patricia Benharbon, who detailed the Cohens’ scheme to defraud the trial court. They testified that, as the Florida and New York actions proceeded, the Cohens arranged meetings with the “corporate nominees” in Paris, and instructed them to give false testimony under oath to conceal the Cohens’ ownership and control of the companies. To prevent inconsistencies in the fabrications, Leon Cohen provided the “corporate nominees” with typed scripts of lies to memorize and repeat at the deposi *1041 tions.[6]
The Cohens were ultimately successful in suborning the perjury of Ms. Aich and Mr. Marabeouf. When deposed on March 9, 2010, and March 10, 2010, Ms. Aich repeated the scripted false testimony under oath. In addition, Ms. Aich and Mr. Marabeouf signed false affidavits, disavowing any knowledge of an agreement to testify falsely. These affidavits were given to the defendants’ attorneys for filing in New York and Florida. Importantly, the Cohens submitted these perjured affidavits in opposition to the Motion to Strike.
The Cohens’ efforts at suborning the perjury of Ms. Habib and Ms. Benharbon were largely foiled. While Ms. Habib and Ms. Benharbon repeated their scripted lies to the defendants’ Florida attorneys during deposition preparation meetings, at their actual depositions, which were conducted just days after the United States government arrested the Cohens, Ms. Ha-bib and Ms. Benharbon invoked their right against self-incrimination. Ms. Habib and Ms. Benharbon ultimately disclosed to the United States government the perjury sessions in France, and turned over the scripts to federal prosecutors.
Finally, the evidence established that several of the Corporate Defendants hired Sylvia Mergui to testify during the rule 1.310(b)(6) depositions as their corporate representative. The Corporate Defendants induced Ms. Mergui’s false and ignorant testimony by providing her with, and having her rely on, the fabricated White-bury documents in preparation for deposition testimony, and withholding corporate documents evincing the true beneficial ownership of Whitebury and the Corporate Defendants. Based on Ms. Mergui’s review of the fraudulent Whitebury promissory notes, she testified that Mr. Levy was the owner of Whitebury, and that neither Maurice Cohen nor Leon Cohen was a beneficial owner of ALR.
Based on the foregoing, the record clearly reflects that the Cohens’ material misrepresentations and omissions about their ownership interests in the Corporate Defendants and Offshore Entities went to the heart of their defense, and subverted the integrity of the Florida action. In their answer, the Cohens denied that stolen money was used to purchase and maintain the Florida Properties, and defended the action below on the theory that they could not be liable to the Bank because they had no ownership interest, direct or indirect, in the entities that defrauded the Bank or controlled the Florida Properties. As has been demonstrated, that theory, and all the evidence in support of it, was entirely fabricated by the Cohens and the Corporate Defendants. Because the evidence clearly and convincingly establishes that the Cohens and the Corporate Defendants engaged in serious misconduct calculated to interfere with the judicial system’s ability to impartially adjudicate the matter below by unfairly hampering the presentation of the Bank’s claims, we agree with the trial court that the Cohens and the Corporate Defendants have forfeited their right to proceed.

II. The Cohens’ Arguments On Appeal

The Cohens advance several arguments in favor of reversal, only two of which merit discussion: (1) none of the fraudulent misconduct took place in the Florida litigation; and (2) they were denied due process. Both arguments are refuted by the record.
*1042 A. An abundance of record evidence demonstrates that the Cohens’ and the Corporate Defendants’ misconduct was calculated to defraud the Florida trial court.
The Cohens argue that reversal is required because all of the alleged fraudulent misconduct took place in the context of a separate litigation, and none of it was calculated to defraud the Florida trial court.
Of course, a trial court may not strike a party’s pleadings solely for misconduct designed to defraud other courts. See Bertrand, 892 So.2d at 1153 (reversing the trial court’s sanction of dismissal because although the sanctioned party had engaged in widespread fraud in front of other courts, the trial court order cited “only a single reference ... that directly relate[d] to the underlying case,” and the referenced statements were “not necessarily inconsistent”); see also Cherubino v. Fenstersheib & Fox, P.A., 925 So.2d 1066, 1069 (Fla. 4th DCA 2006) (reversing the trial court’s sanction of dismissal because “the majority of the inconsistencies highlighted” by the movant occurred in a separate case, and several of the few inconsistencies present in the case at bar arguably “were not knowing deceptions” and “simply did not demonstrate the blatant or extreme conduct necessary to prove fraud on the court”). However, when analyzing a party’s intent to defraud the trial court, the trial court “may consider all the circumstances surrounding the alleged violations, including a party’s misconduct in related cases.” Quantum Commc’ns Corp. v. Star Broad., Inc., 473 F.Supp.2d 1249, 1274 (S.D.Fla.2007). The ultimate question remains whether the party’s misconduct was intended to defraud the trial court considering the sanctions.
The Cohens’ argument is without merit, if not disingenuous. There is an abundance of record evidence demonstrating misconduct in the Florida litigation.
(i) The Cohens produced the falsified Whitebury documents in the Florida litigation.
The trial court specifically found that the forged Whitebury documents were intended to and did infect the Florida litigation.[7] Importantly, in their answer, the Cohens denied stolen money was used to purchase and maintain the Florida Properties, and they produced the “Whitebury documents in connection with their denials. In addition, in the Florida litigation, the Cohens produced these sham “Whitebury records in response to document requests. Finally, as established above, several of the Corporate Defendants hired Sylvia Mergui to testify on their behalf in the Florida litigation. To induce false and ignorant testimony, the Corporate Defendants provided the sham Whitebury documents to Ms. Mergui in her preparation for deposition, and withheld documents relating to the beneficial ownership of “White-bury and the Corporate Defendants.
(ii) The Cohens invited the Florida trial court to accept their perjured deposition testimony, and also submitted perjured affidavits in opposition to the Motion to Strike.
As established above, when the Cohens were noticed to testify before the *1043 Florida trial court at a lis pendens hearing, they filed a motion for a protective order, asking the Florida trial court to accept the New York depositions in lieu of live testimony because “testimony at the forthcoming evidentiary hearing would certainly be duplicative of that just given in New York.” As the Cohens intended, the perjured depositions were introduced into evidence without objection during the lis pen-dens bond hearings. Additionally, in a separate evidentiary hearing, the Cohens submitted their perjured New York deposition testimony to the Florida trial court to support their motion to dismiss based on improper venue. Finally, the Cohens submitted perjured affidavits to the Florida trial court in opposition to the Motion to Strike.
(iii) The Cohens suborned and attempted to suborn the perjury of witnesses that were material to the Florida litigation, and submitted the witnesses’ perjured affidavits in opposition to the Motion to Strike.
The Cohens argue the subornation of perjury and attempts to suborn perjury only prove their intent to defraud the New York court because when the perjury sessions were held, the witnesses were scheduled to be deposed only in New York. This argument, however, fails to consider that the witnesses were material in both the New York and the Florida proceedings. Further, the Cohens specifically ordered Ms. Habib to lie to the attorneys involved in the Florida litigation. As a consequence, when Ms. Habib met with several attorneys in Paris, including one representing the Cohens in the Florida case, she repeated the lies contained in the script. By lying to the Florida lawyer, the Cohens were able to use their Florida attorneys to propagate false filings with the Florida court. Finally, and perhaps most directly, the Cohens submitted the perjured affidavits of Ms. Aich and Mr. Marabeouf in opposition to the Motion to Strike.
B. The Cohens Were Not Deprived of Due Process.
The Cohens argue reversal is required because they were deprived of due process based on the untimely filing of documents by the Bank shortly before the hearing on the Motion to Strike. We disagree, as the newly-filed documents were: (1) not introduced or relied on by the trial court; (2) documents the defendants themselves supplied in the New York litigation; or (3) documents that were withheld by the defendants in violation of production orders, and independently discovered by the Bank shortly before the hearing on the Motion to Strike. More importantly, after closing arguments at the hearing on the Motion to Strike, the trial court offered to continue the hearing to provide the defendants additional time to prepare and review the newly-filed evidence, and to take any steps necessary to reduce any prejudice to the defendants.
If you have due process concerns, we can continue [the hearing] and I can give you another day to put evidence on, if you want, or to look at the evidence and look at all of the documents and all of the depositions, and if you have some concerns, we can reconvene, and I can give you time to do whatever you need to do to reduce the prejudice to the defendants.
(emphasis added). The defendants declined the offer, elected to “let the chips fall where they may,” and thereby waived any due process concerns relating to the *1044 newly-filed documents.[8]
The Cohens also contend they were denied due process because the Bank did not specifically identify the “Whitebury Shareholder Affidavit” and “Whitebury Promissory Notes” as documents it would rely on during the hearing on the Motion to Strike. We are equally unpersuaded by this argument.
In motion practice, due process requires, among other things, “fair notice of the charges and allegations” mounted against the opposing party. Neff v. Adler, 416 So.2d 1240, 1242-43 (Fla. 4th DCA 1982) (citing Goss v. Lopez, 419 U.S. 565, 578-79, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)); see also Fla. R. Civ. Proc. 1.100(b) (“An application to the court for an order shall be by motion which shall be made in writing unless made during a hearing or trial, shall state with particularity the grounds therefore, and shall set forth the relief or order sought.”). “The purpose of rule 1.100 is to put the opposing party on notice of the grounds which will be asserted against it.” Jaffrey v. Baggy Bunny, Inc., 733 So.2d 1140, 1141 (Fla. 4th DCA 1999).
The Bank fully satisfied the requirements of due process and rule 1.100(b). To begin with, the Motion to Strike contains a detailed explanation of the Cohens’ scheme to defraud the Florida trial court, including an allegation that the Cohens “forg[ed] documents to conceal their ownership interest in various corporate entities.” (emphasis added). Moreover, prior to the hearing, the Bank filed a supplemental memorandum in support of its Motion to Strike, explaining as follows:
Mauric[e] Cohen ... is the only individual who has signature authority on all of the relevant accounts, including White-bury Limited Shipping ... only Mau-ric[e] Cohen and his children ... ever received money from any of those accounts ... and [o]nly Mauricfe] Cohen appears on bank records as the owner of the companies and their accounts, except on the forged documents showing Habib Levy as the owner of White-bury.
In furtherance of their campaign of deceit, the Cohens produced falsified documents designed to conceal their ownership of the various corporate entities. Although numerous false documents exist, a critical document relates to the purported ownership of White-bury.
To help conceal the true ownership of Whitebury, the Cohens created a bogus “Shareholder Affidavit” and a series of purported promissory notes, all of which identified a “Habib Levy” as Whitebury’s owner.
The documents purporting to bear Habib Levy’s signature and identifying him as the owner of Whitebury are forgeries. Habib Levy has clearly and unequivocally testified that he did not sign these documents....
*1045 (emphasis added). The Bank attached the Whitebury Shareholder Affidavit and the Whitebury Promissory Notes as exhibits to the Supplemental Memorandum.
Thus, the Bank, in its Motion to Strike, stated with particularity that the Cohens “forg[ed] documents to conceal their ownership interest in various corporate entities,” putting the defendants on fair notice of the Bank’s grounds for sanctions. Additionally, although the Bank, in the Motion to Strike, did not specifically refer to the “documents” by name, i.e., “Whitebury Shareholder Affidavit” or “Whitebury Promissory Notes,” it clearly cited to and explained these documents by name, and in great detail, in its- supplemental memorandum in support of its Motion to Strike. We, therefore, find no merit to the Cohens’ due process arguments.

III. Lea Cohen and the Corporate Defendants’ Arguments On Appeal

Lea Cohen and the Corporate Defendants contend the trial court erred by adopting verbatim the order submitted by the Bank, and Lea Cohen argues that there was insufficient evidence of misconduct by her to justify the striking of her pleadings. We address these arguments separately, and conclude as follows.
A. The trial court did not improperly delegate its decision-making authority to the Bank.
Lea Cohen and the Corporate Defendants contend the trial court improperly delegated its decision-making authority to the Bank by adopting the Bank’s proposed default order verbatim, without having articulated any findings of fact or conclusions of law during the hearing. We disagree because the adopted order is not inconsistent with an earlier pronouncement of the trial judge, and there was no appearance of impropriety justifying a suspicion of unfairness.
In Perlow v. Berg-Perlow, 875 So.2d 388 (Fla.2004), the Florida Supreme Court clarified the standard. governing a trial court’s adoption of a party’s proposed order. The Court made clear that a party’s proposed order “cannot substitute for a thoughtful and independent analysis of the facts, issues, and law by the trial judge,” and approved of cases[9] holding that reversal is required based on a trial court’s adoption of a proposed order: (1) when the signed judgment is inconsistent with an earlier pronouncement of the trial judge; and (2) where the appearance of impropriety so permeated the proceeding below as to justify a suspicion of unfairness.[10] Id. at 388-91.
*1046 The trial court’s adoption of the Bank’s proposed order did not run afoul of Berg-Perlow or its progeny, as there were no inconsistencies between the adopted orders and any earlier pronouncement by the trial court; the defendants were provided a meaningful opportunity to object; and the record reflects that the trial court actively participated in the proceedings, reviewed all of the evidence, and considered the arguments.
The trial court provided both parties an opportunity to submit their own proposed orders, specifically stating: “I would love a proposed order from both sides, but you need to email it to me because I need to look at it if I want to change it or add something or delete something.” Both parties took advantage of the opportunity, and filed proposed orders — the defendants on October 25, 2010, and the Bank on November 2, 2010. Importantly, the trial court did not enter its default order until November 8, 2010. Thus, whereas the trial court in Berg-Perlow adopted the proposed order only two hours after its submission, the trial court in this case did not adopt the Bank’s proposed order until thirteen days after the defendants’ submission, and six days after the Bank’s submission. See Beharry v. Drake, 52 So.3d 790, 792 (Fla. 5th DCA 2010) (distinguishing Berg-Perlow and finding no impropriety where the trial court received proposed final judgments from both parties and did not enter its final judgment until six days after submission of the proposed judgments); In re T.D. v. Dep’t of Children & Family Servs., 924 So.2d 827, 830 n. 2 (Fla. 2d DCA 2005) (holding that “if all parties have prepared proposed judgments, their own submissions would likely apprise the judge of their positions and their disagreements with the opposing party’s”); Cabrera v. Cabrera, 987 So.2d 753, 755 (Fla. 3d DCA 2008) (“The trial court’s active participation in the proceedings supports our conclusion that there is no appearance that the trial court did not exercise its independent judgment when entering the final judgment in the instant case.”).
For these reasons, we conclude that the trial court did not improperly delegate its decision-making authority to the Bank.
B. The Bank failed to produce evidence in support of its allegation that Lea Cohen was involved in the fraud upon the trial court.
Lea Cohen argues the default sanction should be reversed as to her because the Bank did not produce any evidence in support of its allegation that Lea Cohen was involved in the fraud on the trial court. We agree.
The Bank alleges Lea Cohen participated in the fraud on the trial court by helping to secure and induce the false and ignorant testimony of Ms. Mergui, who Lea Cohen recruited to serve as corporate representative for the Corporate Defendants. While Ms. Mergui confirmed that Lea Cohen was the one who informed her about the opportunity to serve as corporate representative, such conduct, standing alone, cannot be classified as fraudulent. In addition, the Bank’s portrayal of Lea Cohen’s participation in the inducement of false and ignorant testimony is entirely unsupported by the record evidence. Although it is true that Ms. Mergui, in preparation for deposition, was provided with the fraudulent Whitebury documents, and was not provided with corporate documents evincing the true beneficial ownership of Whitebury or the Corporate Defendants, the Bank has not produced any evidence suggesting that Lea Cohen was responsible for, or played any role in, these decisions. We therefore reverse the *1047 default sanction with respect to Lea Cohen.

CONCLUSION

While we are mindful of Florida’s strong public policy favoring the resolution of cases on their merits, the judiciary cannot be, and is not, impotent against those wishing to corrupt the litigation process by employing fraud and deception at every turn. Accordingly, we affirm the default judgment as it pertains to the Cohens and the Corporate Defendants because the record evidence establishes, clearly and convincingly, that these litigants have engaged in a massive and unprecedented scheme to defraud the trial court below. We, however, reverse the default sanction as to Lea Cohen because the Bank has failed to produce evidence in support of its allegation that she was involved in the fraud on the trial court.
Affirmed in part, and reversed in part.

. The Cohens, Lea Cohen, and the Corporate Defendants will be collectively referred to as "the defendants.”

. A bearer share corporation lacks records, and ownership is based on physical possession of shares, as opposed to a registered share corporation which has corporate records disclosing ownership.

. Subsidies of one of the Corporate Defendants, American Leisure Resorts, Inc. ("ALR"), own the six Florida Properties that are the subject of the Bank’s equitable claims in this case.

. All other counts were dropped.

. We direct counsel for the defendants to "Tab 14” of the Bank's appendix, which contains the discovery orders referred to and disputed by counsel for the defendants at oral argument. Specifically, the order dated September 17, 2010, states: "Accordingly, the Third Motion is GRANTED. The Corporate Defendants shall produce all documents relating to and reflecting the natural personfs) who beneficially own the Corporate Defendants within 10 days of the date of this Order.”

. The scripts even contained physical descriptions and backgrounds for the fictional owners of the Offshore Entities.

. The Cohens argue that the Whitebury documents were merely collateral to the Florida litigation because nothing about Whitebury was alleged in the complaint, and, thus, whether the information was true or false did not go to the central issue in this case. This argument does not merit significant analysis. The Cohens injected the ownership of White-bury into issue by defending the case below on the ground that ALR was funded with "clean’' money from Whitebury, rather than with money stolen from the Bank.

. We reject the defendants' argument that since the trial court’s offer came after the "damage had already been done,” the additional time would have served no purpose, and thus the defendants did not waive due process objections. The defendants could have used the additional time offered by the trial court to develop challenges to the admissibility of die newly-filed documents, and, based on these challenges, could have urged the trial court not to rely on the newly-filed documents in making its determination. See Petion v. State, 48 So.3d 726, 727 (Fla.2010) ("[Djuring a non-jury trial, a judge is presumed to have disregarded inadmissible evidence.”); see also EM. v. State, 61 So.3d 1255 (Fla. 3d DCA 2011).

. Cole Taylor Bank v. Shannon, 772 So.2d 546 (Fla. 1st DCA 2000); Hanson v. Hanson, 678 So.2d 522 (Fla. 5th DCA 1996); Ross v. Botha, 867 So.2d 567 (Fla. 4th DCA 2004).

. In Berg-Perlow, the Florida Supreme Court expressly approved of Cole Taylor Bank, in which the First District held that reversal of an adopted order is required only in three situations:
[1] when the signed judgment is inconsistent with an earlier pronouncement of the trial judge, see Ford Motor Co. v. Starling, 721 So.2d 335, 337 n. 4 (Fla. 5th DCA 1998), [2] where the “appearance of impropriety so permeated the proceeding below as to justify a suspicion of unfairness,” Hanson, 678 So.2d at 525, or [3] where the record establishes that the final judgment does not "reflect the trial judge's independent decision on issues of a case,” Flint v. Fortson, 744 So.2d 1217, 1220 (Fla. 4th DCA 1999).
However, in Berg-Perlow, the Supreme Court combined the second and third grounds for reversal into a single analysis, holding that there was an appearance of impropriety because there was an appearance that the final judgment does not reflect the trial judge's independent decision.