CONNER, J.
Joel M. Weissman and Joel M. Weiss-man, P.A., (collectively “the Firm”) represented the husband in a dissolution of marriage proceeding. The Firm appeals the trial court’s order which required the Firm to disgorge “one half of the liquid assets ... [the Firm] is holding for the [h]usband as temporary attorney fees and costs for the [w]ife.”
On appeal, the Firm raises (1) that it was not given notice and a true opportunity to be heard on the issue of disgorgement, (2) that the court did not possess the necessary jurisdiction and authority over the Firm to issue such an order of disgorgement, and (3) the factual findings contained within the order were not supported by sufficient, competent evidence. Because the trial court’s order exceeded *329 the scope of what was noticed for the temporary relief hearing, the Firm was denied sufficient notice as to the court’s order of disgorgement contained within its temporary relief order. Accordingly, we reverse and remand for further proceedings.

Factual Background

The trial court held a hearing to resolve the wife’s temporary relief motion, in which she requested $190,000 in temporary attorney’s fees and costs. Notice of the motion and hearing was sent to the husband’s counsel. At the beginning of the hearing, the wife’s counsel raised, for the first time, the issue of forfeiture (or “disgorgement”) of fees paid to the husband’s counsel. The court initially responded that the issue of forfeiture would be reserved for the final hearing.
At the temporary relief hearing, evidence was presented which demonstrated that at the time the wife initiated the divorce action, the parties had a substantial amount of liquid marital assets. Immediately after the wife filed her motion for temporary fees and costs, the husband executed an investment agreement wherein he agreed to transfer and invest most of the liquid marital assets with a person with whom he had never done business with before. Pursuant to the investment agreement, the husband became a forty-five percent owner of an existing food brokerage and distribution company located overseas. The other owner was not required to contribute any additional money to capitalize the business and the business was not expected to generate income for several years. The investment agreement prohibited the husband from receiving any of his invested money until 2014. The husband’s transfer of a portion of his liquid marital assets to the overseas business occurred prior to the Firm’s representation of the husband. At the time the Firm became the husband’s counsel of record, $300,000 of marital funds remained liquid.
Weissman testified at the hearing that the husband was charged and paid $206,447.50 for legal services and costs between September 14, 2012 and November 29, 2012.[1] Weissman testified that the source of payment was the husband’s father through the use of a credit card. Weissman also testified that the husband was periodically repaying the husband’s father from an unknown source of liquid funds. At a prior deposition of the husband, however, the husband identified a joint marital savings account as the source of his ongoing reimbursements to his father.
Following the temporary fee hearing, the trial court made the following written findings of fact:
The Husband used the remaining $400,000 or so of liquid marital assets to pay his own expenses, and exorbitantly high fees to his dissolution of marriage lawyers and experts, ($311,908 from September 14, 2012 to the date of hearing December 10, 2012). The Husband paid these professional fees via a scheme involving payments to his attorney using his father’s credit cards, and cash repayment from marital funds to his father. The Husband says he has only $6,240.00 of the marital assets left.
Wife Exhibit 1 from December 10, 2012 hearing, is a recap of the attorney’s fees and expenses regarding this dissolution *330 of marriage action the Husband claims to have incurred for the seven weeks between September 14, 2012 and November 29, 2012. Incredibly, during that short period, it shows Husband was billed for 351 hours of attorney time at $400-$500 per hour, 195 hours of paralegal time at $175 per hour, plus $11,121 in costs, among other things. Husband’s evidence regarding his disposition of the marital funds set forth above is not credible and not reasonable. The evidence is clear that the Husband’s attorney is holding $311,908 of marital funds on the Husband’s behalf, ostensibly for past or future professional services.
In granting attorney’s fees and costs to the wife, the trial court explained:
[The Husband’s] attorney is holding $311,908 of liquid assets for payment of Husband’s attorney fees, expert fees, and related expenses of [the] dissolution of marriage litigation. The Wife needs access to competent counsel, which can only be accomplished with temporary attorney fees paid by the Husband who controls all of the liquid marital assets. It is necessary, just, and equitable that counsel for the Husband disgorge one half of the liquid assets ($155,954) he is holding for the Husband, as temporary attorney fees and costs for the Wife. Counsel for the Husband shall pay $155,954 directly to counsel for the Wife within three days of the date of this Temporary Order, as temporary attorney fees and costs for the Wife in this litigation. Thus each party has immediate access to sufficient resources to reasonably conduct this litigation to conclusion.[2]

Legal Analysis

We begin our analysis by stating the obvious. Due process requires that each party be given fair notice and a reasonable opportunity to be heard. Hanson v. Hanson, 678 So.2d 522, 524 (Fla. 5th DCA 1996). Where a party’s motion fails to raise an issue or where the trial court’s order exceeds the scope of what was noticed for hearing, the affected party is denied sufficient notice if a determination is made on such basis, unless the parties try the issue by consent.[3] Burkhart v. Burkhart, 620 So.2d 225, 226 (Fla. 1st DCA 1993); Margulies v. Margulies, 528 So.2d 957, 959 (Fla. 3d DCA 1988).
As to the forfeiture or disgorgement of funds, an attorney is entitled to the same reasonable notice and opportunity to be heard, even if he or she is merely holding those funds as a retainer for legal services not yet rendered. See Brand v. Old Republic Nat’l Title Ins. Co., 797 So.2d 643, 645 (Fla. 3d DCA 2001). In the instant matter, the wife’s motion for temporary fees and costs was legally insufficient to put the Firm on notice that the funds it was holding could be taken and distributed to the wife’s attorney. Further, the wife’s motion did not suggest a need or intent to examine the reasonableness of the fees charged to the husband by the Firm.[4] Because of the insufficient notice provided to it, the Firm had no reason to believe that the trial court’s proceedings concerning temporary fees and costs could *331 result in a disgorgement of funds that the Firm was holding, or that the trial court would inquire into the appropriateness of the fees charged to, and collected from, its client. Because the Firm was not granted sufficient notice, its right to be heard was substantially hindered in that it was not given the opportunity to gather or present supporting evidence.
During the course of the hearing, the trial court may have become concerned and even alarmed from the evidence presented. Indeed, the trial court may have quite reasonably suspected that the husband had engaged in tactics to minimize his ability to pay the wife’s attorney’s fees and costs. And although it is not clear from the record, the trial court may also have been concerned that the Firm either intentionally or unknowingly participated in the scheme.
A trial court has “inherent power to do all things that are reasonably necessary to administer justice within the scope of [its] jurisdiction, subject to existing laws and constitutional provisions.” Brand, 797 So.2d at 645. This power generally concerns “the incidents of litigation, control of the court’s process and procedure, control of the conduct of its officers, and the preservation of order and decorum with reference to its proceedings.” Id. (emphasis added). And, it includes the power to sanction attorneys. Id. Where misappropriation of escrowed funds by attorneys of record is proven, the trial court may exercise its inherent power to sanction the attorneys by disgorging the funds and regaining control of them. Id. Thus, contrary to the Firm’s argument, the trial court — with fair advance notice to all — did and does have jurisdiction to order disgorgement when there is competent and substantial evidence to support the court’s inherent authority.

Reversed and remanded for further proceeding consistent with this opinion.

WARNER and CIKLIN, JJ„ concur.

. A letter from Weissman to the husband was admitted into evidence which indicated Weissman worked 145.50 hours at a rate of $500 per hour, earning $74,750; "Of Counsel" worked on the case for 206.60 hours for a fee of $82,740; and paralegals and other staff work earned a fee of $3,711.50. Costs totaled $11,121. The total amount earned between September 14, 2012 and November 29, 2012, was $206,447.50.

.In her answer brief, the wife concedes that the court made a mathematical error: only $206,447.50, instead of $311,908, was turned over to the Firm. Further, the wife concedes that the issue of forfeiture should have been reserved for final hearing.

. Here, the Firm did not try the issue of disgorgement by consent.

. The amended motion sought an injunction against dissipation of marital assets, but makes no reference to how they may have been dissipated in the past.