DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**R.J. REYNOLDS TOBACCO COMPANY, PHILIP MORRIS USA INC.** and **LIGGETT GROUP LLC AND VECTOR GROUP LTD.,**
Petitioners,

v.

**SAUNDRA ALONSO,** as personal representative of the Estate of **FRANCIS ALONSO, DELORES BALABAN, DONALD CHAMPION,** as personal representative of the Estate of **GAYLE KELLA, MARK COHN AND MILDRED COHN, TIMOTHY KELLEY AND CYNTHIA KELLEY, BERNARD KRANIS AND CLAIRE KRANIS, LEAH NERENBERG,** as personal representative of the Estate of **JACK NERENBERG, OMAR RAMADAN,** as personal representative of the Estate of **FAROUK RAMADAN, JOHN REINER,** as personal representative of the Estate of **DELORES REINER, PERRY SILVER,** as personal representative of the Estate of **JEANETTE BLINDER, STANLEY RAY TINNELL,** as personal representative of the Estate of **ELTHE M. TINNELL, PETER M. TUTTMAN,** as personal representative of the Estate of **JEROME A. TUTTMAN,**
Respondents.

No. 4D18-2444

[February 6, 2019]

CORRECTED OPINION

Petition for writ of prohibition to the Circuit Court for the Seventeenth Judicial Circuit, Broward County; William W. Haury, Jr., Judge; L.T. Case Nos. 2007-CA-036893 (18), 2008-CA-000529 (18), 2008-CA-000909 (18), 2008-CA-000927 (18), 2008-CA-001337 (18), 2008-CA-001468 (18), 2008-CA-019475 (18), 2008-CA-019637 (18), 2008-CA-022577 (18), 2008-CA-022598 (18), 2010-CA-035537 (18), and 2014-CA-024204 (18).

Val Leppert and William L. Durham II, of King & Spalding LLP, Atlanta, Georgia, and Jeffrey L. Furr of King & Spalding LLP, Charlotte, North Carolina, for petitioner R.J. Reynolds Tobacco Company.

Stacey E. Deere and Timothy E. Congrove of Shook, Hardy & Bacon LLP, Kansas City, Missouri, for petitioner Philip Morris USA Inc.

Kelly Anne Luther, Maria H. Ruiz and Giselle Manseur of Kasowitz Benson Torres LLP, Miami, for petitioners Liggett Group LLC and Vector Group LTD.

Jonathan Martin, John S. Mills and Courtney Brewer of The Mills Firm, P.A., Tallahassee, and David Sales of David J. Sales, P.A., Sarasota, for respondents Timothy Kelley, Perry Silver and Leah Nerenberg.

Juan P. Bauta, II, and James L. Ferraro of The Ferraro Law Firm, P.A., Miami, for respondent Dolores Balaban.

CONNER, J.

R.J. Reynolds Tobacco Company and other defendants below (collectively, "Petitioner") seek to disqualify the trial judge below in twelve cases, after the trial judge disclosed an ex parte communication with a plaintiff's counsel in another tobacco litigation case about an issue that is a hot button issue in tobacco litigation cases. Based on the unique facts of these cases, we grant the petition.

*Background*

The cases we address in this proceeding are *Engle*[1] progeny tobacco cases. In another *Engle* progeny tobacco case pending at the same time, which Petitioner refers to as the "*Calloway* case," the trial court conducted a pre-trial status conference. At the beginning of the status conference, the following occurred:

> THE COURT: Mr. Gdanski [(plaintiff's counsel)], is Mr. Hammer [another attorney in the firm] going to participate in this trial?
>
> MR. GDANSKI: Mr. Hammer is going to participate in this trial, yes, sir.
>
> THE COURT: Okay. Very well.
>
> Pursuant to the commentary of Canon 3E(1) of the Code of Judicial Conduct, please be advised that I have known Mr. Hammer for approximately 30 years. We were teammates on the same flag football team in the Broward County Young

---

[1] *Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246 (Fla. 2006).

2

Lawyers Division. I've seen Mr. Hammer intermittently since then.

Approximately two years ago, Mr. Hammer moved down the street from me. I see him a few times a week, him and his dog.

This past Sunday, I spoke with him with regard to his recent trial in front of Judge Rodriguez. I guess it went until approximately midnight one night. We also spoke briefly with regard to Judge Rodriguez and his thoughts concerning consolidations. So, thank you.

Based on the above disclosure, Petitioner moved to disqualify the trial judge in the *Calloway* case. The motion was denied. Petitioner then filed a petition for writ of prohibition in this Court regarding the *Calloway* case.

The day after the *Calloway* petition was filed in this Court, Petitioner moved to disqualify the trial judge in the fifteen other *Engle* progeny cases then pending before the same judge, alleging the same grounds asserted in the *Calloway* case. The day after the motions for disqualification were filed in twelve of the cases, the motions were summarily denied by the trial court.

Thereafter, we issued an order in *Calloway* requesting the plaintiff to show cause why the petition should not be granted. Five days later, before any appellate determination was made in *Calloway*, the trial judge entered an order in that case "of its own initiative" disqualifying himself. The *Calloway* disqualification order additionally ordered that the case was transferred to another circuit judge, with trial to commence only three days after the date of the order.

Three days after entering the disqualification order in *Calloway*, the trial judge also issued orders in three remaining *Engle* progeny cases in which the motion to disqualify were pending, granting the motions. In the three remaining cases, Mr. Hammer was counsel of record. However, in the twelve other cases in which the motions to disqualify were previously denied, Mr. Hammer was not counsel of record.

Petitioner then filed the petition under review, seeking to prohibit the trial judge from further presiding over the twelve cases in which the motions to disqualify were denied. The petition argues that in addition to the disclosure made by the trial judge during the status conference, the trial judge has demonstrated bias by entering a sua sponte order of

3

disqualification in the *Calloway* case at a time during which the trial court did not have jurisdiction to enter such an order, by handpicking the successor judge for that case, and by pushing the *Calloway* case to trial within three days after the entry of the disqualification order.

As we did in *Calloway*, we issued an order to show cause. Respondents have filed responses and Petitioner has filed a reply. We proceed with our appellate analysis.

*Appellate Analysis*

"Whether the motion [to disqualify a trial judge] is legally sufficient is a question of law, and the standard of review of a trial judge's determination of a motion to disqualify is de novo." *Gregory v. State*, 118 So. 3d 770, 778 (Fla. 2013). "Whether the motion is legally sufficient requires a determination as to whether the alleged facts would create in a reasonably prudent person a well-founded fear of not receiving a fair and impartial trial." *Id.* (quoting *Rodriguez v. State*, 919 So. 2d 1252, 1274 (Fla. 2005)). Subjective fear is not sufficient; instead, the fear must be objectively reasonable. *Id.*

In this case, the alleged sole ground for disqualification is an ex parte communication by the trial judge. The Code of Judicial Conduct in Canon 3B(7) states that:

> (7) A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. *A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding except that*:
>
> . . . .
>
> (e) *A judge may initiate or consider any ex parte communications when expressly authorized by law to do so.*

Fla. Code Jud. Conduct, Cannon 3B(7) (emphases added). Regarding Canon 3B(7), the commentary to the code provision makes clear that "[t]he proscription against communications concerning a proceeding includes *communications* from lawyers, law teachers, and *other persons who are not participants in the proceeding,* except to the limited extent permitted." Fla. Code Jud. Conduct, Cannon 3B(7) cmt. (emphases added).

4

Under certain circumstances, an ex parte communication alone can be sufficient to require disqualification. "It is because of its effect on the appearance of impartiality that an allegation of an ex parte communication is legally sufficient to require recusal." *Pearson v. Pearson*, 870 So. 2d 248, 249 (Fla. 2d DCA 2004) (holding that an ex parte communication alone is legally sufficient to require recusal); *Robbins v. Robbins*, 742 So. 2d 395, 397 (Fla. 2d DCA 1999) (same). For that reason, in cases addressing motions for disqualification based on ex parte communications with a judge, the issue is not whether an ex parte communication *actually* prejudices one party at the expense of another. Instead, "[t]he impartiality of the trial judge must be beyond question." *Rose v. State*, 601 So. 2d 1181, 1183 (Fla. 1992). In most cases, it is the extent or duration of the ex parte communication which gives the appearance that the trial judge is not impartial. *See, e.g., Pearson*, 870 So. 2d at 249 (trial judge interviewed the child in chambers with the mother present and neither father nor counsel were present); *Rollins v. Baker*, 683 So. 2d 1138, 1139 (Fla. 5th DCA 1996) (trial judge permitted wife's counsel to appear for an undetermined amount of time to discuss request for entry of an injunction for protection, without notice to husband or his counsel); *Hanson v. Hanson*, 678 So. 2d 522, 523 (Fla. 5th DCA 1996) (trial judge and counsel spent an hour discussing the proposed final judgment counsel was to prepare, without notice to opposing counsel).

An ex parte communication in addition to other actions by the trial judge can be grounds for disqualification, where the extent or duration of the communication appears to be brief. In *Brake v. Murphy*, 693 So. 2d 663 (Fla. 3d DCA 1997), an attorney's billing records showed the attorney had two fifteen minute conferences with the trial judge to discuss a proposed draft order. *Id.* at 665. After addressing an argument that the motion for disqualification was untimely, the Third District determined that the two relatively short instances of ex parte communications warranted disqualification and wrote: "The certitude of our decision . . . is reinforced by several highly questionable orders rendered after the surcharge order [entered after the ex parte communication]." *Id.*

However, "[a]n ex-parte communication by a judge is not, per se, a ground for disqualification as a matter of law." *Nassetta v. Kaplan*, 557 So. 2d 919, 921 (Fla. 4th DCA 1990). A motion asserting an ex parte communication as grounds for disqualifying a judge must allege the communication with specificity and must demonstrate prejudice. *Id.*; *Patton v. State*, 784 So. 2d 380, 391 (Fla. 2000) (allegations regarding ex parte proceedings must evidence prejudice on the part of the judge). In other words, in the context of ex parte communications, the motion to

disqualify must demonstrate prejudice by establishing that the impartiality of the trial judge is not "beyond question."

In deciding this case, we are guided by the principle that "[a] trial judge's decision must be overturned when 'the appellate court cannot determine if the trial judge's actions were harmless because the trial court's order was based on communications outside the record.'" *Albert v. Rogers*, 57 So. 3d 233, 236 (Fla. 4th DCA 2011) (quoting *Wilson v. Armstrong*, 686 So. 2d 647, 648-49 (Fla. 1st DCA 1996)). In *Albert*, that legal principle was applied in the context of the trial judge engaging in ex parte communications by conducting an independent investigation of the facts. *Id.* at 235. In *Wilson*, the principle was applied in the context of the trial judge engaging in an ex parte communication with one of the parties' accountant. 686 So. 2d at 648. We apply the principle in this case as well because in disclosing the ex parte communication in this case, the trial judge did not supply sufficient details of the communication to allow us to conclude there was no prejudice because "[t]he impartiality of the trial judge [is] beyond question." *Rose*, 601 So. 2d at 1183.

The trial judge in this case sought to avoid the appearance of impropriety by properly complying with Canon 3E(1) and disclosing in the *Calloway* case his relationship with Attorney Hammer and the conversation he had with him the weekend before. It is clear from that disclosure that there was a "brief" conversation about Hammer's recent *Engle* progeny trial before Judge Rodriguez. The trial judge then explained, "We also spoke briefly with regard to Judge Rodriguez and *his* thought concerning consolidations." Presumably, "his thoughts" was a reference to Judge Rodriguez, but an inference could be drawn that "his thoughts" referred to Attorney Hammer. Regardless, we agree with Petitioner's argument that it is unknown *what information was discussed by Hammer* about the issue of consolidation, which appears to be a hot button issue in *Engle* progeny cases.

More troubling are the steps taken by the trial judge *after* the ex parte communication. When Petitioner moved to disqualify the trial judge in the *Calloway* proceeding, the motion was denied, resulting in a prohibition proceeding before this Court. After we issued an order to show cause in *Calloway* and before any appellate decision was made, the trial judge sua sponte issued an order of recusal in that case. We are very troubled by the fact that in the *Calloway* disqualification order, the trial judge ignored our stay order and directed that the *Calloway* case be transferred to another judge, specifically named, and that the scheduled trial was to begin on a specific date.

Given the unique facts of this case: (1) the ex parte communication with the trial judge in *Calloway* about an issue that is a hot button issue in *Engle* progeny cases, as disclosed by a brief statement describing the topic, but with no details; (2) a reversal in position by the trial judge in *Calloway* by voluntarily disqualifying himself while appellate review was pending and the attempt to control the case after disqualification; and (3) the timing of orders denying motions to disqualify in twelve *Engle* progeny cases and granting such motions in three cases, where all fifteen motions alleged the same grounds, we conclude that we are required to overturn the trial court's order denying disqualification because the trial court permitted an ex parte communication on an important topic involving *Engle* progeny cases and we cannot determine that the trial judge's actions were harmless. *See Wilson*, 686 So. 2d at 648-49. We further conclude that the unique facts of this case demonstrate that "the appearance of impropriety so permeated the proceeding[s] below as to justify a suspicion of unfairness, mandating reversal." *Hanson*, 678 So. 2d at 525.

Our decision in this case should not be construed or interpreted to mean that the trial judge should be disqualified in all *Engle* progeny cases that may appear before him.

*Petition granted.*

GERBER, C.J., and CIKLIN, J., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***