# Third District Court of Appeal

## State of Florida

Opinion filed November 01, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-2104
Lower Tribunal No. 15-22078
_____

**Leda Obregon,**
Appellant/Cross-Appellee,

vs.

**Rosana Corp. d/b/a Original Uncle Tom's Barbeque,**
Appellee/Cross-Appellant.


An Appeal from the Circuit Court for Miami-Dade County, Jorge E. Cueto, Judge.

Wasson & Associates, Chartered, and Annabel C. Majewski; Rubenstein Law, P.A., and Miriam Fresco Agrait, for appellant/cross-appellee.

Luks, Santaniello, Petrillo & Jones, and Daniel J. Santaniello and Edgardo Ferreyra, Jr. and Shana P. Nogues, for appellee/cross-appellant.


Before ROTHENBERG, C.J., and FERNANDEZ and SCALES, JJ.

ROTHENBERG, C.J.

Leda Obregon, the plaintiff in a slip and fall case filed against Rosana Corp. d/b/a/ Original Uncle Tom's Barbeque ("Uncle Tom's"), appeals the trial court's order dismissing her complaint with prejudice for fraud on the court. Because the trial court's order is supported by clear and convincing evidence, see Empire World Towers, LLC v. CDA Creances, S.A.S., 89 So. 3d 1034, 1038 (Fla. 3d DCA 2012) ("The proponent of a motion to strike pleadings must prove, by clear and convincing evidence, 'that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense."), we affirm. We additionally treat Uncle Tom's cross-appeal as a timely filed notice of appeal of the trial court's order denying Uncle Tom's motion for entitlement to attorney's fees based on its proposal for settlement, and because we find no ambiguity, we reverse the October 17, 2016 order denying the motion for entitlement to attorney's fees and remand for further proceedings.

Obregon allegedly slipped and fell at Uncle Tom's on May 14, 2012, and she filed a complaint against Uncle Tom's on September 24, 2015, seeking damages for injuries to her neck, back, right leg, right shoulder, and right arm. The record reflects that although Obregon revealed some of the medical providers who had treated her prior to the 2012 slip and fall, in response to the slip and fall

interrogatories and collateral source interrogatories, she failed to disclose numerous health care providers who had treated her for injuries and pain directly related to the injuries she is seeking damages for in the lawsuit against Uncle Tom's.

During Obregon's May 10, 2016 deposition, Uncle Tom's learned that Obregon had medical insurance through Medica Healthcare, a fact not previously disclosed by Obregon in her responses to the collateral source interrogatories. Uncle Tom's also learned that Obregon had received treatment at Mercy Hospital and had been treated by Dr. Rheinhardt Reyes and Dr. Gonzalez. Obregon omitted these healthcare providers from her responses to the slip and fall interrogatories. As a result of the information discovered during Obregon's deposition, Uncle Tom's subpoenaed records from Medica Healthcare, Mercy Hospital, Dr. Reyes, and Dr. Gonzalez. As a result of this investigation, Uncle Tom's uncovered sixteen additional treating facilities and healthcare providers that had not been disclosed in Obregon's written discovery responses or during her deposition.

A review of the records of the various healthcare providers Obregon failed to disclose revealed that although Obregon had denied presenting for payment or receiving any payment from any insurance company or third party for damages flowing from the slip and fall at Uncle Tom's, this statement was false. The records reflect that numerous payments had been made to numerous different

3

healthcare providers. But, more importantly, a review of these records revealed that although Obregon denied during her deposition that she had been diagnosed with a herniated disc, she had been diagnosed with a herniated disc in her neck as early as 2009, and this diagnosis was confirmed in 2010 and 2011. Additionally, although Obregon denied being involved in any auto accidents since 2008, these undisclosed records revealed that she was involved in an auto accident on January 26, 2011 that resulted in injuries; Obregon filed a PIP claim for injuries to her back, neck, and left shoulder as a result of that accident; and she was treated forty-one times by healthcare providers not disclosed in either discovery or during Obregon's deposition.

When Uncle Tom's learned that Obregon was receiving social security disability benefits, Uncle Tom's subpoenaed the non-privileged records of the attorney who represented Obregon in conjunction with her disability claim and discovered nine more physicians and facilities that had treated Obregon, which she also failed to disclose. These records revealed that Obregon had a pre-existing disc herniation, which was documented by several of her treating physicians and was reflected in their reports, which Obregon herself had submitted to the lawyer representing her in her disability claim. For example, a follow-up note from Dr. Reyes dated September 29, 2010, notes a cervical spine herniation diagnosis; a medical record from Complete Medical Care Associates, dated November 5, 2010,

4

states that Obregon's medical issues include "[n]eck pain radiating down both upper extremities with a C6-C7 herniated disc as the patient indicated"; and a record from Dr. Richard Fernandez, dated October 29, 2010, states that Obregon's chief complaints include two herniated discs.

Lastly, when asked during her deposition what the basis for her disability claim was and whether her disability was related to her fall at Uncle Tom's, Obregon stated that her disability was as a result of chronic migraines and fibromyalgia, and was not at all related to her fall at Uncle Tom's. The December 19, 2012 disability determination and transmittal form, however, indicates that the primary diagnosis was for a "back disorder (disc degernative)" and that Obregon's initial claim for disability on September 25, 2012 was due to "[f]oraminal stenosis L4 and S1; [v]ertical radiculopathy C6 and C7; [m]igraines; [f]ibromyalgia."

Based on the relevant and material information undisclosed by Obregon and discovered by Uncle Tom's, much of which contradicted Obregon's responses to discovery and her sworn deposition, Uncle Tom's filed a motion to strike Obregon's pleadings for fraud on the court and set the motion for a hearing. Obregon, who attended the hearing, did not testify or present any counter record evidence, although her counsel did argue against the motion. The trial court deferred ruling on the motion and, on the following day, issued its order granting the motion.

## Arguments on Appeal

## A. The Order striking Obregon's pleadings

Obregon seeks reversal of the trial court's order striking Obregon's pleadings for fraud on the court (1) based on the trial court's failure to conduct an evidentiary hearing, and (2) because Uncle Tom's did not prove by clear and convincing evidence that Obregon's non-disclosures and misrepresentations were willful. We find that the hearing was properly noticed and Obregon was provided with an opportunity to be heard. Obregon, however, failed to present any counter evidence or object to the nature of the hearing or to the trial court rendering its ruling on the motion based on the evidence and arguments by counsel presented at the hearing. Thus, the issue of the form of the hearing was not preserved for appellate review. See McKnight v. Evancheck, 907 So. 2d 699, 701 (Fla. 4th DCA 2005) (affirming a dismissal for fraud on the court based on medical records and where neither party requested an evidentiary hearing); Long v. Swofford, 805 So. 2d 882, 884 (Fla. 3d DCA 2001) (affirming dismissal of the complaint with prejudice for fraud on the court after the trial court conducted a hearing and reviewed the plaintiff's medical records and deposition); Savino v. Fla. Drive In Theatre Mgmt., Inc., 697 So. 2d 1011, 1012 (Fla. 4th DCA 1997) (affirming dismissal for fraud on the court and finding that the plaintiff failed to preserve for review the absence of an evidentiary hearing).

The record also clearly reflects that the trial court's order was supported by clear and convincing evidence. Our review of the case law also reflects that, in similar cases, the ultimate sanction of dismissal of a plaintiff's complaint has been upheld after appellate review. See McKnight, 907 So. 2d at 701 (affirming the dismissal of McKnight's complaint for fraud on the court based on McKnight's omission of an extensive medical history, which, if it had gone undiscovered, would have interfered with the jury's ability to fairly adjudicate the issues); Distefano v. State Farm Mut. Auto. Ins. Co., 846 So. 2d 572, 574-575 (Fla. 1st DCA 2003) (concluding that dismissal with prejudice of the plaintiff's complaint was an appropriate sanction where the plaintiff's omissions and misrepresentations did not result from mere oversight or forgetfulness and were about matters bearing directly on the issue of damages); Metro. Dade Cty. v. Martinsen, 736 So. 2d 794, 995-96 (Fla. 3d DCA 1999) (reversing a jury verdict and remanding for dismissal of the plaintiff's case because, although the plaintiff had provided some truthful information about her treating doctors, she did not provide full and complete information during the discovery process).

We, therefore, affirm the trial court's order striking Obregon's pleadings for fraud on the court.

**B. The order denying Uncle Tom's motion for attorney's fees**

7

Following the rendition of the underlying final judgment, Uncle Tom's filed its motion for entitlement to attorney's fees in the trial court on August 25, 2016. The trial court entered an order on October 17, 2016, denying the motion. On November 14, 2016, Uncle Tom's filed a notice of cross-appeal of the October 17, 2016 order in the instant case. Obregon argues, and we agree, that this post-judgment order denying Uncle Tom's motion for attorney's fees was improperly filed as a cross-appeal and that the order should have been appealed separately. See Webb Gen. Contr., Inc. v. PDM Hydrostorage, Inc., 397 So. 2d 1058, 1060 (Fla. 3d DCA 1981) (holding that "[i]t is not the function of a cross-appeal to seek review of a distinct and separate judgment, albeit rendered in the same case below, favorable to the appellant").

However, we conclude that Uncle Tom's incorrect designation of its appeal as a cross-appeal does not warrant a dismissal of its appeal where the appeal was timely filed, Obregon has plainly been advised of the order being appealed, and Obregon has suffered no prejudice or inconvenience. Austin v. B.J. Apparel Corp., 527 So. 2d 206, 206-07 (Fla. 3d DCA 1987). See also Milar Galleries, Inc. v. Miller, 349 So. 2d 170, 171-72 (Fla. 1977) (holding that dismissal is improper where there is no prejudice to appellee from deficiencies or ambiguities in the notice of appeal); Brown v. Winn Dixie Stores, Inc., 267 So. 2d 78, 80 (Fla. 1972) (holding that "a notice of appeal is sufficient if it gives the Appellate Court and the

8

adverse party information adequate to identify in the record the judgment intended to be appealed. But primarily, the party moving to dismiss the appeal must show some prejudice of inconvenience caused by the deficiency in the notice of appeal").

The notice filed by Uncle Tom's clearly and plainly identified the order being appealed, it was timely filed, the notice attached a copy of the order, and Obregon has not been prejudiced or inconvenienced by the improper characterization of the appealed order as a cross-appeal. We therefore treat the notice of cross-appeal as a notice of appeal and address the arguments raised on appeal on the merits.

The motion for attorney's fees was filed pursuant to section 768.79, Florida Statutes, and Florida Rule of Civil Procedure 1.442, based on Uncle Tom's proposal for settlement and Obregon's rejection of the proposal. Section 768.79 provides that a party has the right to recover reasonable attorney's fees if all dictates of the statute and rule 1.442 have been followed. In MGR Equipment Corp. v. Wilson Ice Enterprises, Inc., 731 So. 2d 1262, 1263 (Fla. 1999), the Florida Supreme Court interpreted this language as mandatory if the statutory prerequisites have been met. See also Anderson v. Hilton Hotels Corp., 202 So. 3d 846, 856 (Fla. 2016); Key West Seaside, LLC v. Certified Lower Keys Plumbing, Inc., 208 So. 3d 718, 721 (Fla. 3d DCA 2015).

9

However, the trial court found that the language contained in the general release attached to the proposal for settlement was ambiguous and thus unenforceable. Specifically, the language the trial court was concerned about was the inclusion of Obregon's "legal representatives" as a releasing party. The Fourth District Court of Appeal previously addressed this very same language contained in the general release in Board of Trustees of Florida Atlantic University v. Bowman, 853 So. 2d 507, 509-10 (Fla. 4th DCA 2003), and concluded that the inclusion of the parties' legal representative in the definition of releasing parties did not render the proposal for settlement unenforceable. The Bowman court found that the language of the release was typical of a general release, and while needlessly expansive, was clear and unambiguous. Id.

Although we do not go so far as to agree that the language of the general release was typical, we do agree that the release was clear, unambiguous, and enforceable. See also Alamo Fin., L.P. v. Mazoff, 112 So. 3d 626, 629 (Fla. 4th DCA 2013) (finding that the reference to "subsidiaries" in the release did not make the proposal ambiguous); Jessla Constr. Corp. v. Miami-Dade Cty. Sch. Bd., 48 So. 3d 127, 130 (Fla. 3d DCA 2010) (concluding that the inclusion of non-parties in the release did not render the proposal unenforceable). Accordingly, we reverse the trial court's order denying Uncle Tom's motion for attorney's fees and remand for further proceedings.

10

## **Conclusion**

We find that the trial court's order striking Obregon's pleadings for fraud on the court is supported by clear and convincing evidence. Accordingly, we affirm the order striking Obregon's pleadings and dismissing her lawsuit with prejudice. We, however, reverse the trial court's order denying Uncle Tom's motion for attorney's fees based on Obregon's rejection of Uncle Tom's proposal for settlement and remand for further proceedings.

Affirmed in part; reversed in part; and remanded.