601 So.2d 1181 (1992)
James Franklin ROSE, Appellant,
v.
STATE of Florida, Appellee.
No. 74248.
Supreme Court of Florida.
May 28, 1992.
Larry Helm Spalding, Capital Collateral Representative, Gail E. Anderson, Asst. *1182 Capital Collateral Representative, and John S. Sommer, Staff Atty., Tallahassee, and Billy H. Nolas and Julie D. Naylor, Sp. Appointed Capital Collateral Representatives, Ocala, for appellant.
Robert A. Butterworth, Atty. Gen. and Celia A. Terenzio, Asst. Atty. Gen., West Palm Beach, for appellee.
BARKETT, Justice.
James Franklin Rose appeals the trial court's denial of his motion for relief pursuant to Florida Rule of Criminal Procedure 3.850.[1] We reverse the trial court's order.
Rose was tried for the first-degree murder and kidnapping of eight-year-old Lisa Berry. The facts of the case are fully set forth in the direct appeal. Rose v. State, 425 So.2d 521, 522-23 (Fla. 1982), cert. denied, 461 U.S. 909, 103 S.Ct. 1883, 76 L.Ed.2d 812 (1983). Briefly stated, on October 22, 1976, Lisa Berry and her mother, Barbara, were at a bowling alley with family and friends, including Rose. Shortly after 9:30 p.m. Rose and Lisa went to the poolroom area of the bowling alley. Rose and Lisa were seen at the exit of the bowling alley by Lisa's sister, Tracy, between 9:30 and 10:00 p.m. At approximately 10:23 p.m. Rose called Barbara at the bowling alley to ask when she would be finished bowling; she said 11:30 p.m. Rose returned to the bowling alley at that time. The State argued that Rose killed Lisa sometime after 9:30 p.m. and before he returned to the bowling alley.
The jury found Rose guilty and recommended the death penalty. The trial judge imposed a sentence of death for the murder and a life sentence for the kidnapping. This Court affirmed the convictions and the life sentence, but vacated the death sentence and remanded for resentencing. Rose, 425 So.2d at 525. On remand, the jury recommended death. The court found no mitigating circumstances. In aggravation, the court found that Rose was under sentence of imprisonment when he committed the murder because he was on parole at the time,[2] that he had previously been convicted of a felony involving the use or threat of violence,[3] and that the murder was committed during the commission of a kidnapping.[4] The death sentence was affirmed by this Court. Rose v. State, 461 So.2d 84, 88 (Fla. 1984), cert. denied, 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985). Thereafter, Rose filed a petition for a writ of habeas corpus which this Court ultimately denied. Rose v. Dugger, 508 So.2d 321, 326 (Fla.), cert. denied, 484 U.S. 933, 108 S.Ct. 308, 98 L.Ed.2d 267 (1987). Rose then filed a motion for postconviction relief pursuant to rule 3.850 which was denied without hearing by the trial court. Rose now appeals the trial court's denial of that motion.
We confine our review to two issues. First, Rose argues that he was denied due process of law because the trial court, without a hearing and as a result of an ex parte communication, adopted the State's proposed order denying relief without providing counsel notice of receipt of the order, a chance to review the order, or an opportunity to object to its contents. Second, Rose asserts that he is entitled to an evidentiary hearing on the allegations contained in his motion.
Rose's 3.850 motion was originally filed by an assistant public defender who was later allowed to withdraw as counsel by the trial court. The State responded to Rose's motion and in its response agreed that an evidentiary hearing was required. Subsequently, the State submitted a proposed order, adopted in its entirety by the trial court, denying all relief. Rose's new counsel was not served with a copy of the proposed order or provided an opportunity to file objections.[5] Under these facts we must assume that the trial court, in an ex *1183 parte communication, had requested the State to prepare the proposed order.
The judicial practice of requesting one party to prepare a proposed order for consideration is a practice born of the limitations of time. Normally, any such request is made in the presence of both parties or by a written communication to both parties. We are not unmindful that in the past, on some occasions, judges, on an ex parte basis, called only one party to direct that party to prepare an order for the judge's signature. The judiciary, however, has come to realize that such a practice is fraught with danger and gives the appearance of impropriety. See generally Steven Lubet, Ex Parte Communications: An Issue in Judicial Conduct, 74 Judicature 96, 96-101 (1990).
Canon 3 A(4) of Florida's Code of Judicial Conduct states clearly that
A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding.

Fla.Bar Code of Jud.Conduct, Canon 3 A(4) (emphasis added). Nothing is more dangerous and destructive of the impartiality of the judiciary than a one-sided communication between a judge and a single litigant. Even the most vigilant and conscientious of judges may be subtly influenced by such contacts. No matter how pure the intent of the party who engages in such contacts, without the benefit of a reply, a judge is placed in the position of possibly receiving inaccurate information or being unduly swayed by unrebutted remarks about the other side's case. The other party should not have to bear the risk of factual oversights or inadvertent negative impressions that might easily be corrected by the chance to present counter arguments. As Justice Overton has said for this Court:
[C]anon [3 A(4)] implements a fundamental requirement for all judicial proceedings under our form of government. Except under limited circumstances, no party should be allowed the advantage of presenting matters to or having matters decided by the judge without notice to all other interested parties. This canon was written with the clear intent of excluding all ex parte communications except when they are expressly authorized by statutes or rules.
In re Inquiry Concerning a Judge: Clayton, 504 So.2d 394, 395 (Fla. 1987).
We are not here concerned with whether an ex parte communication actually prejudices one party at the expense of the other. The most insidious result of ex parte communications is their effect on the appearance of the impartiality of the tribunal. The impartiality of the trial judge must be beyond question. In the words of Chief Justice Terrell:
This Court is committed to the doctrine that every litigant is entitled to nothing less than the cold neutrality of an impartial judge... . The exercise of any other policy tends to discredit the judiciary and shadow the administration of justice.
... The attitude of the judge and the atmosphere of the court room should indeed be such that no matter what charge is lodged against a litigant or what cause he is called on to litigate, he can approach the bar with every assurance that he is in a forum where the judicial ermine is everything that it typifies, purity and justice. The guaranty of a fair and impartial trial can mean nothing less than this.
State ex rel. Davis v. Parks, 141 Fla. 516, 519-20, 194 So. 613, 615 (1939). Thus, a judge should not engage in any conversation about a pending case with only one of the parties participating in that conversation. Obviously, we understand that this would not include strictly administrative matters not dealing in any way with the merits of the case.
In this case, the issue was compounded by the State's concession that an evidentiary hearing was required on some of the factual matters alleged. For example, the motion states that the case was tried based on the State's theory that Rose *1184 killed Lisa Berry between the hours of 9:30 and 10:23 p.m.[6] Rose claims that there were five witnesses who saw Lisa at the bowling alley between 10:30 and 11:50 p.m.  after Rose had, under the State's theory at trial, committed the murder and returned to the bowling alley. The motion alleges that the statements and/or testmony of these witnesses were available to defense counsel but were not used at trial. We agree that this issue merits an evidentiary hearing.
Thus, we reverse the order denying Rose's motion for postconviction relief. We direct the trial court to reconsider Rose's motion and to hold an evidentiary hearing on the ineffective assistance of counsel claims and any other appropriate factual issues presented in the motion.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, GRIMES and KOGAN, JJ., concur.
HARDING, J., concurs with an opinion.
HARDING, Justice, concurring.
I concur with the majority opinion and write only to emphasize that, in my experience as a trial judge, where more than one attorney or party has made an appearance in a case, I found that there were few administrative matters which would require or justify an ex parte communication with a judge. The most obvious administrative matter would relate to setting hearings on motions and other matters. Care should be exercised even in this regard.
In maintaining calendar control, many judges deem it appropriate to personally screen and approve the setting of cases which require more than a set period of time, that is, thirty minutes. If the judge must become personally involved, in any way, in the setting of a hearing, care should be given that all parties have equal opportunity to participate in the setting of that hearing. Judge's calendars and dockets are generally very crowded. Time on them is a precious commodity which should be distributed in a fair manner. It probably will be common knowledge that an explanation to the judge is required to set a hearing lasting longer than a set time. Thus, if all parties are not involved in setting the case, it will be assumed that there was an ex parte communication with the judge in order to obtain the time. Ex parte communications with a judge, even when related to such matters as scheduling, can often damage the perception of fairness and should be avoided where at all possible.
The number of lawyers has grown significantly in recent years in most locations. It is impossible for lawyers to know each other and the judges with the same degree of familiarity that they did in the past. It is also more common for lawyers to appear in courts "away from home" than it was in the past. This growth in numbers and mobility places a greater burden on the judge to ensure that neutrality continues to exist. Judges should be ever vigilant that every litigant gets that to which he or she is entitled: "the cold neutrality of an impartial judge." State ex rel. Davis v. Parks, 141 Fla. 516, 519-20, 194 So. 613, 615 (1939).
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution.
[2] § 921.141(5)(a), Fla. Stat. (1975).
[3] Id. § 921.141(5)(b).
[4] Id. § 921.141(5)(d).
[5] A copy of the proposed order was sent to Rose's former counsel.
[6] The State does not contest this characterization.