622 So.2d 982 (1993)
James Roger HUFF, Appellant,
v.
STATE of Florida, Appellee.
No. 79276.
Supreme Court of Florida.
July 1, 1993.
Rehearing Denied September 3, 1993.
Billy H. Nolas and Julie D. Naylor, Ocala, for appellant.
Robert A. Butterworth, Atty. Gen. and Kellie A. Nielan, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
James Roger Huff, a prisoner under sentence of death, appeals the trial court's summary denial of his motion to vacate judgment and sentence filed pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution.
In 1980 Huff was convicted of two counts of first-degree murder and was sentenced to death for killing his parents. This Court reversed the convictions and sentences and remanded for a new trial. Huff v. State, 437 So.2d 1087 (Fla. 1983). On retrial Huff was again convicted and sentenced to death on both counts. On appeal, this Court affirmed both the convictions and the sentences. Huff v. State, 495 So.2d 145 (Fla. 1986). On December 2, 1988, Huff filed a motion to vacate judgment and sentence pursuant to rule 3.850. The motion was signed by an attorney employed with the Florida Office of the Capital Collateral Representative (CCR), but that attorney was not authorized to practice law in the State of Florida. Filed with the 3.850 motion was a motion to admit the attorney pro hac vice as counsel of record. The trial court entered an order striking *983 the motion for postconviction relief from the record as being null and void. On appeal, this Court determined that the trial court should have granted the motion to admit the CCR attorney and then should have considered Huff's rule 3.850 motion. Huff v. State, 569 So.2d 1247 (Fla. 1990). Accordingly, this Court remanded the cause to the trial court for consideration of the rule 3.850 motion.
On remand, the trial court denied Huff's rule 3.850 motion without hearing. The State submitted a proposed order denying Huff all relief. The record does not reflect when the proposed order was submitted or what prompted the submission. CCR received a copy of the proposed order on Friday, September 6, 1991. The trial court signed the order as submitted on Monday, September 9, 1991, before Huff had the opportunity to raise objections or submit an alternative order.
We confine our review to the issue of whether the circuit court's treatment of Huff's 3.850 motion violated his due process rights. In view of the wide scope of issues raised below[1] and the fact that the death penalty was involved as well as the other circumstances in this case, we agree with Huff that his due process rights were violated. Huff should have been afforded an opportunity to raise objections and make alternative suggestions to the order before the judge signed it. As this Court explained in Rose v. State, 601 So.2d 1181, 1183 (Fla. 1992), "[t]he other party should not have to bear the risk of factual oversights or inadvertent negative impressions that might easily be corrected by the chance to present counter arguments."
The State argues that Rose is inapposite to this case because Huff's attorney received a copy of the proposed order. In Rose, the proposed order was sent to Rose's former counsel and his new counsel was never served a copy nor given notice of receipt of the order by the court. Id. at 1182 & n. 5. Consequently, Rose was never given an opportunity to review the order or to object to its contents before the court signed the order denying all relief. This Court reversed the order denying Rose's motion for relief. Id. at 1184.
Even though the factual circumstances of the instant case are somewhat different from those in Rose, we find that the same due process concerns expressed in Rose are also present in this case. Rose was denied due process of law because his counsel was never served a copy of the proposed order; thereby depriving Rose of the opportunity to review the order and to object to its contents. In the instant case, CCR received a copy of the proposed order on Friday before the court signed it on Monday. This did not afford Huff a sufficient opportunity to review the order, much less to object to its contents. In fact, according to CCR's presentation at oral argument, Huff's attorneys were in the process of preparing a response to the proposed order when they received the court's signed order. At oral argument, CCR also noted that Huff's attorneys had previously requested a status conference regarding the motion for postconviction relief, but that the court did not grant the conference. "The essence of due process is that fair notice and a reasonable opportunity to be heard must be given to interested parties before judgment is rendered." Scull v. State, 569 So.2d 1251, 1252 (Fla. 1990). We find that Huff was denied due process of law because the court did not give him a reasonable opportunity to be heard.
Because of the severity of punishment at issue in a death penalty postconviction case, we have determined that henceforth the judge must allow the attorneys the opportunity to appear before the court and be heard on an initial 3.850 motion. This does not mean that the judge must conduct an evidentiary hearing in all death penalty postconviction cases. Instead, the hearing before the judge is for the purpose of determining whether an evidentiary hearing is required and to hear legal argument relating to the motion. If this procedure had been followed in the instant case, this Court might not be faced with the issue of whether Huff's due process rights were violated.
*984 Unlike Rose, we do not find that the facts in this case support an assumption that the trial court and the State engaged in an improper ex parte communication regarding the order. Huff's motion for rehearing contains the following quote from the cover letter that accompanied the order submitted by the State to the judge: "A copy is being furnished this same day to CCR, with the encouragement that counsel for the Defendant submit his or her own proposed Order to the Court, expressing, no doubt, a contrary resolution." This quotation gives a strong indication that the State submitted the order on its own initiative and without an ex parte request from the court, as was the case in Rose. However, even if the State submitted the order on its own initiative, the court's wholesale adoption of the unsolicited order, without an opportunity for Huff's counsel to object to its contents, leaves the impression that Huff's arguments were not considered. Moreover, the State's cover letter anticipated that Huff would be given an opportunity to participate in the decision-making by the judge. The effect on the appearance of the impartiality of the tribunal is precisely the "insidious result" that this Court condemned in Rose. 601 So.2d at 1183.
The State further argues that Huff has only addressed the procedural improprieties and has not presented any specific objections to the contents of the order and thus has not demonstrated that reversal on this issue would serve any purpose. In effect, the State seems to argue that Huff's claim puts form over substance. We do not agree. When a procedural error reaches the level of a due process violation, it becomes a matter of substance. Huff's motion for rehearing, which was denied by the trial court, objected to the flawed procedure rather than to the contents of the order. This motion is very similar to the motion for rehearing filed with the trial court in Rose, where this Court limited review to the procedural errors. In Rose, we noted that the overriding concern is "the appearance of the impartiality of the tribunal", rather than actual prejudice. Id. While we do not address the merits of Huff's claims, we do note that he has raised specific objections to the contents of the order before this Court and that the motion for rehearing that he submitted to the trial court incorporates by reference the specific claims contained in his 3.850 motion and supporting memoranda.
Huff also alleges that the judge neither received nor reviewed the record of Huff's trial before denying the motion for postconviction relief.[2] The record refutes that claim. The order denying Huff's motion for postconviction relief specifically states that the court reviewed Huff's motion and memorandum and supplemental discussion in support of the motion, the State's responses, and "all of the records" before denying the motion.
For the foregoing reasons, we set aside the order denying Huff's motion for postconviction relief and remand for proceedings consistent with this opinion.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Huff's petition for postconviction relief was 81 Pages in length. Upon remand to the circuit court by this Court, Huff also filed a 50-Page supplemental memorandum.
[2] The circuit judge who entered the order under review was not the judge who presided over Huff's trial or originally dismissed his 3.850 motion.