# Supreme Court of Florida

_____

No. SC2023-1501
_____

**ROBERT CRAFT,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

December 19, 2024

SASSO, J.

Robert Craft, a prisoner under a sentence of death, appeals the circuit court's denial of his initial motion for postconviction relief under Florida Rule of Criminal Procedure 3.851. We have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const. For the reasons we explain below, we affirm the denial of postconviction relief.

# I

## A

The facts of this case, set forth in this Court's opinion on direct appeal, are as follows:

> On May 16, 2018, Craft strangled and beat to death Darren W. Shira in the cell they shared at Columbia Correctional Institution. Following Shira's murder, Craft confessed multiple times, including in two recorded statements to Special Agent Terrance Tyler of the Florida Department of Law Enforcement and in letters to the state attorney's office and the trial court.
>
> The trial court accurately summarized Craft's statements and the circumstances of the killing in the sentencing order, in pertinent part, as follows:
>
>> [T]he Defendant [admitted] that he "tortured" the victim "on purpose." He explained the various methods and manner in which he attacked the victim over approximately 30 minutes [and] . . . [h]e admitted that he only stopped this relentless attack when the victim's feet turned purple, there was blood coming out of the victim's nose, and the victim's eyes were bulging. . . .
>>
>> . . . .
>>
>> . . . The Defendant admitted that the victim did not pose a threat to him nor did the victim initiate the altercation. Rather, the Defendant admitted that the victim was lying on his bed when the Defendant initiated the attack by slapping the victim's feet. As soon as the victim sat up, the Defendant smacked or punched the victim's face and then launched into a physical attack that lasted, according to the Defendant, about a half hour.

The Defendant explained that he first attempted to crush the victim's neck but that this proved more difficult than in the movies, so he had to strangle the victim. The victim offered minimal resistance. Nonetheless, the Defendant "beat on" the victim with his fists, continued to choke the victim, and pulled the victim off of his bed and onto the floor where the Defendant used his feet against the wall as leverage to push down on the victim's throat. The Defendant also tore off the white stripe that runs down the side of the prison pants and tied this around the victim's neck. . . .

. . . .

[Further,] . . . the Defendant admitted that he had planned the murder. Specifically, he explained that, after learning that the victim was in prison for allegedly molesting children, the Defendant determined that he was going to kill the victim and immediately began planning the murder, which he committed a few days later. According to his own admission, the Defendant waited because he first wanted to inform his sister, via letter, that he was going to "catch a body." He also informed other inmates, prior to the killing, that he was going to kill the victim and was even offered a knife for the killing, which he refused. Another inmate, according to the Defendant, attempted to convince the Defendant not to do it. The Defendant also realized that the killing would likely be bloody, so he removed the victim's pants and donned them during the attack to prevent his pants from getting covered in blood. He further admitted that he had intended to sodomize the victim but that he could not do that. Moreover, while explaining to Special Agent Tyler that he had planned the murder for a few

days, he stated that he wanted the murder to be "CCP" and even asked if it would be considered a hate crime because the victim was Jewish, gay, a child molester, and ex-Navy. The Defendant also told Special Agent Tyler that he had told the victim, while they were eating dinner [just before the killing], that this was the victim's last meal and that it was a pretty "f[***]ed up" last meal.[n.6]

> [N.6] Even the discovery of the body was orchestrated by the Defendant: he told the inmate trustee that he had some trash, and when directed to slide it under the door of his cell, he stated that a dead body would not fit.

*Craft v. State*, 312 So. 3d 45, 47-48 (Fla. 2020) (alterations and omissions in original).

On October 1, 2018, Craft was indicted for premeditated first-degree murder. *Id.* at 48. Shortly thereafter, Craft "began expressing his desires to quickly end his case, plead guilty, waive a penalty-phase jury, waive mitigation, and receive the death penalty." *Id.* On January 23, 2019, the trial court held a hearing during which Craft "maintained that he wanted to waive counsel and represent himself, that he wanted to proceed with a speedy bench trial, and that he did 'not want mitigation.' " *Id.*

- 4 -

Before ruling on Craft's request to waive counsel and proceed pro se, the trial court ordered two mental health experts, Dr. Salvatore M. Blandino and Dr. Chris P. Robison, to evaluate Craft for competency. *Id.* at 49. Dr. Blandino and Dr. Robison evaluated Craft in tandem on March 25, 2019, and reported that Craft was competent to represent himself. *Id.* On March 27, 2019, the trial court orally found Craft competent based on the experts' evaluations, conducted a *Faretta*[1] inquiry, ruled that Craft could waive counsel and represent himself, and appointed standby counsel. *Id.*

Craft then "immediately announced his desire to plead guilty." *Id.* After a recess, the trial court conducted a plea colloquy with Craft. *Id.* During the colloquy, Craft stated that he did not have all the State's discovery but explained that he wanted to plead guilty anyway. The specific exchange between Craft and the trial judge was as follows:

> THE DEFENDANT: Well, I spoke to the State about it. I had two motions. One of them I don't need now because I'm putting in a plea of guilty, but I have one that I was going submit [sic], a demand for discovery. Because I

---

1. *Faretta v. California,* 422 U.S. 806 (1975).

- 5 -

was sent a discovery, but from the index, going over the index part, the whole discovery is not there.

THE COURT: Do you want to wait on taking your plea until after you have received that other discovery or you just want it for your own records later?

THE DEFENDANT: I want it for my own records later, Your Honor.

THE COURT: That's really important because if there's anything in that discovery that might affect whether you want to plead guilty, then it needs to be in your hands and you need to review it before you plead guilty. If you're telling me, regardless of what it says, I want to plead guilty. I want those papers, but it's not going to affect my plea. Do you want to plead today even without those papers?

THE DEFENDANT: Yes, Your Honor.

Following the colloquy, Craft pled guilty and stated he wanted to waive his right to a penalty-phase hearing. *Id.* at 49-50. The trial court accepted Craft's guilty plea, finding it was "freely, voluntarily, knowingly and intelligently given." *Id.* at 50.

On May 13, 2019, the trial court held Craft's penalty-phase proceeding. *Id.* Craft maintained his desire to continue to waive counsel and a penalty-phase jury and indicated that he did not intend to present mitigation. *Id.* However, Craft ultimately allowed the testimony of four family members. *Id.* Additionally, he made

- 6 -

his own statement explaining why he pled guilty, admitting that he killed the victim, explaining why he wanted a death sentence, expressing love for his family, and saying he was sorry that his actions had made them suffer. *Id.* at 50-51.

Thereafter, the trial court held a combined *Spencer*[2] and sentencing hearing. *Id.* at 51. During the hearing, Craft maintained his desire to represent himself, confirmed that he did not want to be heard on any of the information contained in the pre-sentence investigation, and stated that he did not want to offer anything else that had not been offered previously. *Id.* The trial court sentenced Craft to death. *Id.* In the direct appeal, this Court affirmed Craft's conviction for first-degree murder and death sentence. *Id.* at 58. Among other things, we determined "that Craft's guilty plea to first-degree murder was knowing, intelligent, and voluntary." *Id.*

**B**

Craft filed a "Motion to Vacate Judgments of Conviction and Sentence with Special Request for Leave to Amend" pursuant to

_____

2. *Spencer v. State*, 615 So. 2d 688 (Fla. 1993).

Florida Rule of Criminal Procedure 3.851 on November 15, 2022.

Craft's rule 3.851 motion sought to vacate his conviction and sentence on six grounds.[3] On July 6, 2023, the circuit court conducted a *Huff*[4] hearing to determine whether an evidentiary hearing was necessary to address any of the claims raised in Craft's motion. After the *Huff* hearing, Craft filed a report of a neuropsychological evaluation conducted by Dr. Barry M. Crown on June 6, 2023, in support of his motion.

Ultimately, the circuit court summarily denied each of Craft's claims. Craft now appeals the circuit court's decision. Specifically,

---

3. The grounds were: (1) trial counsel was prejudicially ineffective in failing to seek a delay in the *Faretta* and change of plea proceedings (this ground also included claims that the trial court did not place Craft under oath before the plea colloquy and that if Craft had received all the State's discovery he would not have pled guilty); (2) prosecutorial misconduct in failing to investigate claims that the Florida Department of Corrections (FDOC) guards wanted the victim to be harmed; (3) prosecutorial misconduct in failing to advise the court of the FDOC guards' role in the killing of the victim as a possible mitigating factor; (4) the State committed a *Giglio*/*Napue* violation by advising the court that Craft could have no pretense of moral justification because there was no evidence the victim was a child molester; (5) Craft's intellectual disability precluded imposition of the death penalty; and (6) cumulative error. Craft withdrew claim five during the *Huff v. State*, 622 So. 2d 982 (Fla. 1993), hearing.

4. *Huff v. State*, 622 So. 2d 982 (Fla. 1993).

Craft argues that the circuit court erred in (1) denying his claim for ineffectiveness of trial counsel for failing to delay the *Faretta* and change of plea hearings; (2) denying his claim based on prosecutorial misconduct for failing to investigate allegations that the guards wanted the victim to be harmed; (3) denying his claim based on prosecutorial misconduct for failing to advise the trial court of the guards housing him with the victim as a possible mitigating factor; and (4) denying his claim based on a misleading closing argument in violation of *Giglio v. United States*[5] and *Napue v. Illinois*.[6] Craft also alleges cumulative error.

## II

A circuit court's decision whether to grant an evidentiary hearing on a rule 3.851 motion is essentially a pure question of law subject to de novo review. *Hojan v. State*, 212 So. 3d 982, 989 (Fla. 2017); *Reynolds v. State*, 99 So. 3d 459, 471 (Fla. 2012). As we explained in *Hojan*:

> When reviewing the circuit court's summary denial of an initial rule 3.851 motion, [the Court] will accept the movant's factual allegations as true and will affirm the

---

5. *Giglio v. United States*, 405 U.S. 150 (1972).

6. *Napue v. Illinois*, 360 U.S. 264 (1959).

ruling only if the filings show that the movant has failed to state a facially sufficient claim, there is no issue of material fact to be determined, the claim should have been brought on direct appeal, or the claim is positively refuted by the record.

212 So. 3d at 989 (quoting *Barnes v. State*, 124 So. 3d 904, 911 (Fla. 2013)).

"An evidentiary hearing must be held on an initial 3.851 motion whenever the movant makes a facially sufficient claim that requires factual determination." *Id.* at 988 (quoting *Barnes*, 124 So. 3d at 911). "[T]he defendant bears the burden of establishing a prima facie case based on a legally valid claim." *Id.* at 989 (internal quotations omitted) (quoting *Barnes*, 124 So. 3d at 911). "[T]o the extent there is any question as to whether a rule 3.851 movant has made a facially sufficient claim requiring a factual determination, the Court will presume that an evidentiary hearing is required." *Id.* (alteration in original) (quoting *Barnes*, 124 So. 3d at 911).

### III

### A

Although Craft raises five issues on appeal, Craft appropriately recognizes that the success of each claim rests on this Court's determination of his first claim. We therefore begin by evaluating

whether the circuit court erred when it denied Craft's claim of ineffectiveness of trial counsel for failing to delay the *Faretta* and change of plea hearings.

To establish ineffective assistance of counsel, Craft must demonstrate that (1) counsel's performance was deficient and (2) the deficiency prejudiced the defendant. *Smith v. State*, 330 So. 3d 867, 875 (Fla. 2021) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "To establish deficiency, the defendant must show a specific act or omission by counsel that falls below an objective standard of reasonableness under prevailing professional norms." *Hampton v. State*, 219 So. 3d 760, 770 (Fla. 2017) (citing *Francois v. State*, 423 So. 2d 357, 359 (Fla. 1982)). "[T]he defendant must establish 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Smith*, 330 So. 3d at 875 (quoting *Strickland*, 466 U.S. at 687). "[T]here is a strong presumption that trial counsel's performance was not ineffective . . . ." *Hampton*, 219 So. 3d at 770. As to prejudice, when a defendant challenges his guilty plea based on ineffective assistance of counsel, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he

would not have pleaded guilty and would have insisted on going to trial." *Brant v. State*, 197 So. 3d 1051, 1063-64 (Fla. 2016) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

In examining Craft's first claim, we note that although Craft has presented it as a singular issue, the claim presents two subclaims, one of which is cognizable and one of which is not. Regardless, both fail.

Craft's first subclaim is that trial counsel was ineffective for failing to obtain a delay of the *Faretta* hearing. On this point, Craft argues that trial counsel was ineffective because counsel was on notice that Craft had frontal lobe brain damage that could be impairing his judgment, including his decision-making ability. For that reason, Craft argues, trial counsel should have sought neuropsychological testing and delayed the *Faretta* hearing.

While this subclaim is properly presented, we reject Craft's argument. Prior to the *Faretta* hearing, two court-appointed experts evaluated Craft and found him competent to proceed. Both experts' reports noted Craft had potential brain damage from a past car accident and from his mother's use of drugs and alcohol while she was pregnant with him. Nonetheless, both experts concluded that

Craft was competent to waive counsel and enter a guilty plea. Trial counsel had the benefit of both expert reports and was permitted to rely on the experts' assessments. *Darling v. State*, 966 So. 2d 366, 377 (Fla. 2007) (finding no deficiency where trial counsel relied on the evaluation conducted by a qualified mental health expert and did not obtain neuropsychological testing, even if, in retrospect, the evaluation may not have been as complete as others desire); *see also Harvey v. Warden, Union Corr. Inst.*, 629 F.3d 1228, 1262 (11th Cir. 2011) (holding that trial counsel's performance was not deficient for trusting his expert's opinion and for not seeking a more thorough mental health evaluation). Therefore, trial counsel's actions were not deficient.

Because counsel's performance was not deficient for failing to delay the *Faretta* hearing, Craft's second subclaim necessarily fails. In this subclaim, Craft argues counsel was ineffective for failing to delay the change of plea hearing. But by this time, Craft was proceeding pro se with standby counsel, and a pro se defendant—"*even if he has standby counsel*"—"cannot later complain that the quality of his defense was substandard or amounted to ineffective assistance of counsel." *McKenzie v. State*, 153 So. 3d 867, 878-79

(Fla. 2014) (citing *Behr v. Bell*, 665 So. 2d 1055, 1056-57 (Fla. 1996)).  For that reason, Craft's ineffective assistance of counsel claim related to the change of plea hearing is not cognizable.

In sum, each of Craft's arguments as to deficient performance of counsel fail, and as a result, his first claim does not provide a basis for relief.[7]  *See also Davis v. State*, 383 So. 3d 743, 757 (Fla. 2024) ("Because *Strickland* requires a defendant to establish both prongs, if one prong is not met, the Court need not reach the other." (quoting *Sheppard v. State*, 338 So. 3d 803, 816 (Fla. 2022))).

**B**

We now turn to the second, third, and fourth claims Craft has raised on appeal.  Each of these claims is predicated on discovery that Craft alleges, had he been aware of, he would not have entered

---

7.  To the extent Craft argues the postconviction court erred in denying an evidentiary hearing based on the State's alleged concession, we reject the argument both because, in context, we do not consider the State's statement regarding the potential necessity of an evidentiary hearing to be a concession and because if the State conceded, it was a legal issue to which the postconviction court was not bound.  *See, e.g., Foster v. State*, 395 So. 3d 127, 130 (Fla. 2024) ("[E]ven characterizing the State's comments at the first hearing as a concession as to whether *Okafor* permitted the trial court to deviate from this Court's mandate, the concession was not binding.").

a guilty plea. As Craft recognizes though, his second, third, and fourth claims fall with his first.

Although presenting distinct legal arguments, each of Craft's claims addressed in this section references a recorded interview that another inmate, Michael Bullett, gave to a Florida Department of Law Enforcement agent. Craft says that in the interview, Bullett told the agent that he was housed with Shira before being transferred out and replaced with Craft. Bullett further stated that when he was placed with Shira, the guards told him Shira was a sex offender and asked Bullett to harm him. When Bullett refused, Craft was transferred in. Craft asserts that this interview would have corroborated his belief that he was "set up" by the FDOC guards to murder the victim.

With this background established, Craft argues that the postconviction court erred in denying his claim for relief based on prosecutorial misconduct because the State failed to investigate Bullett's allegations that the prison guards intentionally placed Craft into the same cell as the victim. However, Craft's claim is procedurally barred.

Craft entered his plea knowing that he did not have complete discovery. It follows then that Craft could have discovered Bullett's statements through due diligence and raised this issue at the appropriate time. As a result, the postconviction court properly determined his claim could have been raised on direct appeal. *See, e.g., Morris v. State*, 317 So. 3d 1054, 1063 (Fla. 2021) (testimony contradicting witness in murder prosecution was not admissible in hearing for postconviction relief, since testimony was not unavailable at trial and could have been discovered with due diligence); *cf. Harich v. State*, 542 So. 2d 980, 981 (Fla. 1989) (finding conflict of interest claim was not procedurally barred because it could not have been discovered previously through due diligence).

For the same reasons, Craft's third argument on appeal also fails. The postconviction court did not err in denying his claim of prosecutorial misconduct for failing to advise the court about the guards placing Craft with Shira, which Craft characterizes as a possible mitigating factor. Again, this claim is procedurally barred notwithstanding Craft's belated discovery of Bullett's interview. *See Downs v. State*, 740 So. 2d 506, 514 (Fla. 1999) ("Because we find

Downs was aware at the time of trial of the evidence he now claims is newly discovered, his claim for ineffective assistance of guilt-phase counsel based on newly discovered evidence is procedurally barred.").

Finally, the postconviction court also did not err in denying Craft's claim that the State committed a *Giglio/Napue* violation when counsel for the State argued that Craft had no pretense of moral justification when he committed the murder. "Claims of improper argument should be raised on direct appeal and are therefore procedurally barred in postconviction proceedings." *Martin v. State*, 311 So. 3d 778, 811 (Fla. 2020) (citing *Jennings v. State*, 123 So. 3d 1101, 1121-22 (Fla. 2013)); *see also Ferrell v. State*, 29 So. 3d 959, 977 (Fla. 2010) ("[A]s the trial court concluded, this claim actually presents a substantive claim of improper closing argument, which should have been raised on direct appeal, and is thus procedurally barred.").

More fundamentally though, Craft objects to the prosecutor's statement not because of what was in the record, but because of what Craft believes should have been in the record. However, as postconviction counsel conceded during the *Huff* hearing, this

- 17 -

potential evidence was not in the record because Craft waived discovery.

In sum, each of Craft's claims is predicated on discovery that Craft waived. The claims are therefore procedurally barred and do not provide a basis for relief.

## C

Finally, Craft alleges cumulative error. However, because each of Craft's preceding claims fails, so does his claim of cumulative error. *Truehill v. State*, 358 So. 3d 1167, 1187 (Fla. 2022) ("[W]here the individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error also necessarily fails." (alteration in original) (quoting *Parker v. State*, 904 So. 2d 370, 380 (Fla. 2005))).

## IV

Because the postconviction court did not err in summarily denying Craft's rule 3.851 motion, we affirm in all respects.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, GROSSHANS, and FRANCIS, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Columbia County,
Melissa G. Olin, Judge
Case No. 122018CF000667CFAXMX

Robert Friedman, Capital Collateral Regional Counsel, and Alice B. Copek, Assistant Capital Collateral Regional Counsel, North Region, Tallahassee, Florida,

for Appellant

Ashley Moody, Attorney General, and Charmaine M. Millsaps, Senior Assistant Attorney General, Tallahassee, Florida,

for Appellee