# Supreme Court of Florida

_____

No. SC2023-1123
_____

**WAYNE C. DOTY,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

January 16, 2025

PER CURIAM.

Wayne C. Doty, a prisoner under sentence of death for the 2011 first-degree premeditated murder of Xavier H. Rodriguez, a fellow prison inmate, appeals the circuit court's order summarily denying his motion for postconviction relief filed under Florida Rule of Criminal Procedure 3.851. Doty also appeals two other circuit court orders entered in the postconviction proceedings, one denying his request for a PET scan and MRI, and one denying his request to interview a venire member. We have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const. As explained below, we affirm.

# I. BACKGROUND

On May 17, 2011, Doty and fellow inmate William E. Wells murdered Rodriguez in Florida State Prison. Soon after Doty was indicted for the murder, he moved to waive the right to counsel. Dr. Harry Krop "assessed Doty's competence and opined that he was competent to stand trial and to represent himself." *Doty v. State*, 170 So. 3d 731, 736 (Fla. 2015). The trial court conducted a *Faretta*[1] hearing and "permitted Doty to proceed pro se, but appointed standby counsel." 170 So. 3d at 734.

In 2012, a self-represented Doty pleaded guilty to the first-degree murder of Rodriguez. *Id.* at 733. Doty also represented himself during the initial penalty phase. *Id.* at 734. We previously outlined what the evidence from that penalty phase showed.

> The evidence showed that Doty was, at the time of the murder, serving a life sentence for the shooting death of his former employer. Doty was transferred to Florida State Prison (FSP) and was assigned to the "K wing," working as a runner. Each wing at the prison had four runners, who worked in pairs and assisted in numerous duties, including distributing meals to the other prisoners and cleaning common areas. In return, the runners were given certain privileges. Doty's partner as a runner was Wells, who assisted in the murder of

---

1. *Faretta v. California*, 422 U.S. 806 (1975).

Rodriguez, another runner on the K wing.

Doty began planning the murder after the victim, Rodriguez, called Doty names and stole some tobacco from Doty approximately two weeks prior to the incident. In exchange for tobacco, Doty convinced another inmate to make him a knife that he could use to murder Rodriguez. On the evening of May 17, 2011, Doty obtained the homemade knife, which was hidden in a newspaper, when he assisted in picking up inmate food trays after dinner. Doty deposited the knife into a trashcan, which he later retrieved and brought to the third-floor interview room that the runners were permitted to use. Doty then placed the weapon in the duct work there so he could easily retrieve it.

That evening, Doty and Wells carefully watched when the officers made their rounds to determine the best time to kill Rodriguez. After convincing Rodriguez to meet them in the third-floor interview room, Doty and Wells tricked Rodriguez into letting them bind his hands by betting him some tobacco that he could not get out of "Coast Guard handcuffs." After his hands were bound, Doty approached Rodriguez from behind and placed him in a rear chokehold. At first, Rodriguez thought it was a joke but, as Doty explained in his confession, "Once I really got that chokehold locked down, he knew the game was over." After Doty felt Rodriguez "go slack," Doty let Rodriguez's body drop to the floor, and Doty later commented that the body made a "hollow thud" as it hit the floor.

Wells ensured that nobody else entered the room, while Doty pulled the body around the desk and began to stab Rodriguez with the homemade knife. Although Doty admitted that he was hoping to pull out Rodriguez's heart "to make sure he was really dead," the knife was too dull and did not work for that task. Doty and Wells then tied a ligature around Rodriguez's neck, smoked a cigarette, took showers, and, after they were sure that Rodriguez was really dead, called a sergeant working at the prison and confessed to the crime.

Dr. William Hamilton, the medical examiner, testified that the victim died from strangulation and multiple stab wounds. According to Dr. Hamilton, the victim likely lost consciousness within 45-50 seconds, but if the chokehold was expertly applied, the victim could have lost consciousness in as little as 10-20 seconds. Dr. Hamilton further testified that he believed the victim was still alive when he was stabbed, but was unconscious and close to death, because the victim lost a small amount of blood from the stab wounds and all of the wounds were located very close together, indicating that the victim was not moving during the stabbing.

*Id.* at 734-35. At the conclusion of the initial penalty phase, the jury by a vote of ten to two recommended a death sentence, and the trial court later imposed a death sentence. *Id.* at 733.

In 2015, we affirmed Doty's conviction and sentence. *Id.* at 734. Among other things, we determined "that Doty's guilty plea was knowingly, intelligently, and voluntarily entered." *Id.* at 739.

In 2016, Doty filed a Rule 3.851 motion for postconviction relief, raising seven penalty-phase claims, including a claim that his death sentence was unconstitutional in light of *Hurst v. Florida*, 577 U.S. 92 (2016). On August 7, 2017, the circuit court granted *Hurst* relief, vacated Doty's death sentence, remanded for a new penalty phase, and dismissed Doty's other claims as moot.

On the same day that the circuit court ordered a new penalty

phase, Doty again moved to waive counsel. The court subsequently conducted another *Faretta* hearing and granted Doty's request. After the court again appointed standby counsel, Doty requested an order "setting stipulations on appointed standby counsel's role." One requested stipulation for standby counsel's "limited participation" was that standby counsel was otherwise not to "intervene in the investigation and preparation" of mitigation, as assistance with those matters was assigned to others. The circuit court entered an order granting Doty's requested stipulations.

The second penalty phase took place on February 19-26, 2018.[2] At its conclusion, the jury unanimously recommended a death sentence. *Doty v. State*, 313 So. 3d 573, 576 (Fla. 2020). The trial court again followed the jury's recommendation and imposed a death sentence. *Id.*

In 2020, we affirmed the death sentence imposed at Doty's second penalty phase. *Id.* at 574. The United States Supreme Court denied certiorari review on November 1, 2021. *Doty v.*

---

2. Prior to Doty's second penalty phase, Wells—who was tried separately for the Rodriguez murder—received a sentence of life in prison without the possibility of parole.

*Florida*, 142 S. Ct. 449 (2021).

On June 16, 2022, Doty filed a motion for PET scan and MRI in which he asserted that two postconviction experts, namely Dr. Valerie McLain (a licensed psychologist) and Dr. Michael Maher (a board-certified psychiatrist), recommended the scans "to corroborate and ascertain detailed information about the presence of neurological disease, and/or brain damage based on evidence of Mr. Doty's severe memory deficits." Doty alleged that the results would be "compelling new evidence" regarding three postconviction claims: competency, ineffectiveness of counsel, and whether Doty "suffered brain damage and/or serious mental illness to a sufficient degree" for purposes of establishing the mental-health statutory mitigators. *See* § 921.141(7)(b), (f), Fla. Stat. (2017). And Doty attached an affidavit from Dr. Maher attesting that the tests were necessary for Dr. Maher "to render a more definitive medical opinion of the nature, extent, and etiology of Mr. Doty's brain dysfunction."

On October 14, 2022, Doty filed the instant Rule 3.851 motion raising eight claims and requesting that his judgments of conviction and sentence be vacated. Three claims related to relative

culpability, including one alleging that violations of *Brady*[3] and *Giglio*[4] involving the testimony of Senior Inspector Kevin Snow and Dr. Hamilton during the second penalty phase "changed the facts of the case to such a degree that the most culpable defendant was improperly changed" from Wells to Doty. Two claims related to Doty's assertion that under *Indiana v. Edwards*, 554 U.S. 164 (2008), he should not have been allowed to represent himself. Another claim alleged that the judge from the second penalty phase impermissibly questioned potential jurors outside Doty's presence. Doty also raised a claim of ineffective assistance of counsel—both "initial trial counsel" back in 2011, as well as standby counsel during the second penalty phase. Finally, Doty alleged cumulative error.

On February 20, 2023, Doty filed a motion to interview a venire member on the ground that she and the judge from the second penalty phase had a conversation outside Doty's presence regarding her marriage to a correctional officer.

---

3. *Brady v. Maryland*, 373 U.S. 83 (1963).

4. *Giglio v. United States*, 405 U.S. 150 (1972).

On March 21, 2023, the circuit court held a *Huff*[5] hearing. And on July 11, 2023, the court entered an order summarily denying Doty's 3.851 motion without an evidentiary hearing, reasoning that Doty's claims were all procedurally barred and otherwise without merit. On that same day, the court separately denied Doty's motion for PET scan and MRI. In that order, the court relied in part on Doty's history of competently representing himself. The court also relied on the 2018 sentencing order, which noted that, other than certain personality disorders, Doty had no history of serious mental illness, brain damage, neurological disorders, delusions, or hallucinations. As to Dr. Maher's affidavit, the court rejected it as "conclusory" and "fail[ing] to establish a particularized showing of need." Lastly, the court concluded there was "no credible evidence" that Doty's "ability to conform his conduct was impaired or that he did not know that killing the victim was wrong." Also on the same day, the court denied as moot Doty's motion to interview the venire member.

This appeal followed.

---

5. *Huff v. State*, 622 So. 2d 982 (Fla. 1993).

## II. ANALYSIS

Doty raises seven issues. Before we explain why the 3.851 claims at issue in this appeal all warranted summary denial and why Doty's two other motions were properly denied, we set forth certain principles involving standards of review and a defendant's decision to waive the right to counsel.

A circuit court's summary denial of a rule 3.851 motion is subject to de novo review. *Kocaker v. State*, 311 So. 3d 814, 821 (Fla. 2020). We have said that "[a]n evidentiary hearing must be held on an initial 3.851 motion whenever the movant makes a facially sufficient claim that requires a factual determination." *Truehill v. State*, 358 So. 3d 1167, 1185 (Fla. 2022) (citing *Seibert v. State*, 64 So. 3d 67, 75 (Fla. 2010)). But we will affirm a summary denial of an initial 3.851 motion "if the filings show that the movant has failed to state a facially sufficient claim, there is no issue of material fact to be determined, the claim should have been brought on direct appeal, or the claim is positively refuted by the record." *Kocaker*, 311 So. 3d at 821 (quoting *Barnes v. State*, 124 So. 3d 904, 911 (Fla. 2013)). As to those claims that could have been raised on direct appeal, we have said that they "are not cognizable

through collateral attack" and "are precluded from our consideration by collateral review." *Smith v. State*, 445 So. 2d 323, 325 (Fla. 1983). Indeed, such claims "are procedurally barred in postconviction." *Barnes*, 124 So. 3d at 912.

We have also recognized "the perils of self-representation," *McKenzie v. State*, 153 So. 3d 867, 882 (Fla. 2014), and the postconviction consequences of a defendant's knowing, intelligent, and voluntary waiver of counsel. We have said in no uncertain terms that a pro se capital defendant "*is entirely responsible for his own defense, even if he has standby counsel,*" and "cannot later complain that the quality of his defense was substandard or amounted to ineffective assistance of counsel." *Id.* at 878-79 (citing *Behr v. Bell*, 665 So. 2d 1055, 1056-57 (Fla. 1996)). That defendant is not "entitled to a 'do-over' of his penalty phase or any phase of his underlying trial in the postconviction context." *Id.* at 884.

Doty's 3.851 claims fall squarely within these well-established principles. The claims are all procedurally barred, facially insufficient, and/or conclusively refuted by the record. Indeed, the claims largely stem from decisions Doty made while representing himself. Doty's request for a PET scan and MRI fares no better,

- 10 -

given that he cannot relate that request to any substantive claim in his 3.851 motion. And his request to interview a venire member is built on a false premise that is conclusively refuted by the record.

## Three Claims Involving Relative Culpability

As postconviction counsel recognized at the *Huff* hearing, three of Doty's claims "are all related to . . . relative culpability." One claim asserts that an evidentiary hearing would have established that Wells was the mastermind and more culpable than Doty. The circuit court denied this claim as procedurally barred and without merit. As to the merits, the court reasoned in part that relative culpability review did not survive this Court's decision in *Lawrence v. State*, 308 So. 3d 544 (Fla. 2020), and that Doty was nevertheless "the primary actor."

A second claim is that the purportedly speculative testimony of the medical examiner, Dr. Hamilton, failed to establish that the stab wounds were an actual cause of death and confused the jury into believing that Doty was more culpable than Wells. The circuit court denied this claim as procedurally barred and without merit. As to the merits, the court reasoned in part that Dr. Hamilton's testimony was merely explanatory and intended to provide context.

The third claim asserts that the testimony of Dr. Hamilton (regarding the probable causes of death) and of Senior Inspector Snow (regarding the sequence of events of the murder as conveyed to him by Doty) during the second penalty phase deviated from their testimony in the initial penalty phase, amounting to false testimony in violation of *Giglio*.[6] According to Doty, Dr. Hamilton originally testified that there was a "good probability" the stab wounds were survivable and "were certainly treatable," whereas he subsequently testified that "25 stab wounds with a dirty shank is more than likely to be fatal from an ultimate infection." And according to Doty, Senior Inspector Snow originally testified that Doty's chokehold was followed by the ligature strangulation and then the stabbings, whereas he later testified that he thought—i.e., if he was "remembering correctly"—the chokehold was followed by the stabbings and then the ligatures. This, says Doty, confused the jury into believing that he was the primary assailant. Doty seemingly attributes the ligature strangulation solely to Wells

---

6. In his 3.851 motion, Doty also advanced a *Brady* claim. Doty does not raise that claim on appeal.

despite telling investigators that they "both tied" the first ligature. And Doty seemingly ignores his chokehold that rendered the victim unconscious.

In any event, the circuit court denied Doty's *Giglio* claims as procedurally barred and without merit. As to the merits, the court reasoned that, among other things, the "correct" sequence of events was stated in Doty's affidavit and the transcript of his interview (both of which were admitted into evidence without objection), that neither witness's testimony was false, and that the testimony had no effect on the aggravators or on whether they outweighed the mitigation.

The circuit court correctly determined that these three claims warranted summary denial. Accordingly, we affirm.

As an initial matter, the circuit court correctly concluded that relative culpability review did not survive *Lawrence*. We made that clear in *Cruz v. State*, 372 So. 3d 1237 (Fla. 2023), *cert. denied*, 144 S. Ct. 1016 (2024). Because relative culpability "cannot now provide a basis for vacating [a] death sentence," *id.* at 1245, Doty's three intertwined claims do not present a cognizable claim.

The claims are also procedurally barred. For example, Doty

- 13 -

could have raised a relative culpability argument on direct appeal— before *Lawrence* issued. He did not.

Doty is also barred from challenging Dr. Hamilton's "speculative" testimony. Because this claim "raise[s] issues concerning . . . evidence introduced at trial, the claim[] should have been challenged on direct appeal and [is] therefore procedurally barred." *Johnson v. State*, 104 So. 3d 1010, 1029 (Fla. 2012).

Nor do Doty's *Giglio* claims escape the procedural bar. As this Court has stated, "a *Giglio* claim 'based on information that the defendant and defense counsel had at the time of trial' is barred." *Jimenez v. State*, 265 So. 3d 462, 479 (Fla. 2018) (quoting *Moore v. State*, 132 So. 3d 718, 724 (Fla. 2013)); *see also, e.g., Calhoun v. State*, 312 So. 3d 826, 852 (Fla. 2019) (holding that *Giglio* claim was "procedurally barred because it [was] based on information . . . available to [defendant] and his counsel at trial"). Doty, of course, was aware of the witness's prior testimony. Indeed, Doty extensively cross-examined Dr. Hamilton during the initial penalty phase but chose not to do so in the second penalty phase. And Doty was obviously aware of the "correct" sequence of events.

Nothing in these three claims suggests we should disregard

- 14 -

their facially insufficient and procedurally barred nature to address whether they are also plainly meritless. We simply note that the circuit court after the initial penalty phase also concluded that Doty "was the primary person responsible for the murder." The court did so based on an evidentiary record that did not include the supposedly false and misleading testimony that Doty alleges was introduced in the second penalty phase.

### *Indiana v. Edwards*; Motion for PET Scan and MRI

Doty—who repeatedly reaffirmed his decision to represent himself and who concedes that he "perform[ed] admirably"—argues that the circuit court erred in summarily denying his claim that under *Indiana v. Edwards*, he was too mentally ill and cognitively impaired to represent himself. Doty also takes issue with the circuit court's denial of his motion for PET scan and MRI. The crux of Doty's claim is that he "was not competent to represent himself" and that this would have been apparent if "the PET/MRI scan had been completed, and if an evidentiary hearing had taken place."

The circuit court concluded that Doty's claim was procedurally barred and conclusively refuted by "[t]he entirety of the record"—a record showing that Doty "ably represented himself in two penalty

- 15 -

phase trials without any difficulty in researching, arguing, or understanding the law applicable to his case and the death penalty," and that Doty "put forward mitigation . . . that . . . provided the jury with a complete picture of his childhood, familial relationships, the prison milieu, and his motivation for committing the murder." The circuit court separately denied Doty's motion for PET scan and MRI. The circuit court did not err in either respect.

Putting aside Doty's own comments at the *Faretta* inquiry on August 29, 2017, that it was "indisputable" he had ably represented himself up to that point and that he had never been diagnosed with any "significant" mental illness, and putting aside Dr. Krop's testimony in the second penalty phase that there was "no question" Doty was "competent to represent [him]self," this claim should have been raised on direct appeal and is thus procedurally barred. And because Doty's 3.851 claim is procedurally barred, Doty "cannot relate [his motion for PET scan and MRI] to any substantive claim he has made in his motion for postconviction relief." *Owen v. State*, 364 So. 3d 1017, 1027 (Fla. 2023). The circuit court thus correctly denied the motion for PET scan and MRI. *See id.* (holding that circuit court correctly denied defendant's motion for MRI and PET

scan, where defendant's "3.851 claims [were] untimely and procedurally barred, or not cognizable").

Nor can Doty relate his motion for PET scan and MRI to the two other postconviction claims he mentioned in his motion—i.e., to establish certain mental-health mitigation and that standby counsel failed to develop a complete mitigation evaluation. Again, Doty cannot use "the postconviction context" to present "evidence that might have been considered . . . as mitigation." *McKenzie*, 153 So. 3d at 884. And as explained below, Doty's claim of ineffectiveness of standby counsel is not cognizable and is otherwise refuted by the record.

Lastly, we reject Doty's suggestion that *Edwards* stands for the proposition that capital defendants should never be allowed to represent themselves. What *Edwards* "conclude[d]" was "that the Constitution does not forbid a State" from "insisting" that a criminal defendant "proceed to trial with counsel" when the defendant is "found" by the "state court" to be "mentally competent to stand trial if represented by counsel but not mentally competent to conduct that trial himself." 554 U.S. at 167.

**Questioning of Potential Jurors; Motion to Interview**

Doty argues that the circuit court erred in summarily denying his claim that the judge from his second penalty phase impermissibly questioned potential jurors outside Doty's presence. Doty also takes issue with the denial of his motion to interview a potential juror regarding a conversation she had with the judge outside Doty's presence.

The circuit court concluded that Doty's claim was procedurally barred and without merit. As to the merits, the court concluded that Doty could not show prejudice or harm, given that he was informed of the discussion with the potential juror, declined to question the potential juror about the matter, and later exercised a peremptory challenge to remove her (without exhausting all peremptory challenges). The circuit court separately denied the motion to interview. We affirm.

This claim is plainly barred because it "could have been litigated at trial and upon direct appeal." *Smith*, 445 So. 2d at 325. Moreover, the factual premise underlying Doty's claim and interview request is refuted by the record. Indeed, Doty suggests that the judge's communication with potential jurors was unbeknownst to

Doty. But the record reflects that the questioning and brief conversation at issue occurred during preliminary qualification—a process that was discussed in advance with Doty, who stated he had "no objections" to that phase of jury selection and who then made a specific request regarding an instruction to be given during the preliminary qualification. On this record, Doty's interview request amounted to a fishing expedition.

## Ineffective Assistance of Counsel

Doty argues the circuit court erred in summarily denying the following two claims of ineffective assistance of counsel: (1) if "initial trial counsel" had developed the necessary rapport and trust with Doty, then Doty "possibl[y]" would not have represented himself, resulting in Doty "likely" being acquitted, convicted of a lesser offense, or sentenced to life in prison; and (2) standby counsel in the second penalty phase failed to conduct a reasonably competent mitigation investigation. As part of the second claim, Doty asserts that the dictates of *Muhammad v. State*, 782 So. 2d 343 (Fla. 2001), were not complied with. We affirm.

Even assuming Doty's guilt-phase claim regarding "initial trial counsel" was not required to be raised in Doty's earlier

postconviction motion, the claim fails because it is speculative and insufficiently pleaded.  It is well established that "[m]ere speculation is not sufficient to form the basis for postconviction relief." *Gonzalez v. State*, 253 So. 3d 526, 528 (Fla. 2018) (quoting *Ellerbee v. State*, 232 So. 3d 909, 918 (Fla. 2017)).  It is also well established "that to be entitled to an evidentiary hearing on a motion claiming ineffective assistance of counsel, the defendant must allege *specific facts* establishing both deficient performance of counsel and prejudice to the defendant."  *Jones v. State*, 998 So. 2d 573, 587 (Fla. 2008) (citing cases).  Doty's speculative claim that he "possibl[y]" would not have represented himself contains no specific facts regarding deficient performance, just a vague assertion regarding "rapport."  Doty's claim also lacks specific facts regarding prejudice, just conclusory assertions.  Doty does not explain why, for example, he would have been "acquitted" of a murder that he confessed—in detail—to planning and committing.  Nor does he explain how counsel could have even "conducted a complete investigation" of all guilt-phase and penalty-phase issues in the brief time before Doty moved to waive counsel.

Doty's claim regarding penalty-phase standby counsel fails

- 20 -

because a pro se defendant—"*even if he has standby counsel*"—
"cannot later complain that the quality of his defense was
substandard or amounted to ineffective assistance of counsel."
*McKenzie,* 153 So. 3d at 878-79 (citing *Behr,* 665 So. 2d at 1056-
57). Indeed, during the *Faretta* hearing, Doty acknowledged that
disadvantage of pro se representation. Doty's claim is not
cognizable. Even if cognizable, his claim is refuted by the record,
which reveals that Doty sought and obtained an order generally
*precluding* standby counsel from assisting "in the investigation and
preparation" of mitigation. Doty fails to mention this order.

Lastly, because Doty "d[id] not waive the right to present
mitigation, *Muhammad*'s investigative procedures do not apply."
*Bell v. State*, 336 So. 3d 211, 217 (Fla. 2022). In any event, a pre-
sentence investigation (PSI) was completed during Doty's initial
penalty phase, and Doty had "no objection" to the PSI report being
utilized during his resentencing.

### Summary Denial of All Claims

Lastly, Doty asserts that the summary denial of all claims
deprived him of a fundamentally fair postconviction evidentiary
hearing. But as explained above, Doty's claims all warranted

- 21 -

summary denial. Accordingly, we deny this claim.

### III. CONCLUSION

For these reasons, we affirm the circuit court's order summarily denying Doty's Rule 3.851 motion, as well as the circuit court's orders denying Doty's motion to interview a venire member and his motion for PET scan and MRI.

It is so ordered.

MUÑIZ, C.J., and CANADY, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.
LABARGA, J., concurs in result with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., concurring in result.

I agree that Doty has not established a basis for postconviction relief under Florida Rule of Criminal Procedure 3.851. However, because I disagree with this Court's abandonment of our long-standing comparative proportionality review, and later, its express abandonment of relative culpability review as a component of comparative proportionality review, I write to reaffirm my dissents in *Lawrence v. State*, 308 So. 3d 544 (Fla. 2020), and *Cruz v. State*, 372 So. 3d 1237 (Fla. 2023).

- 22 -

An Appeal from the Circuit Court in and for Bradford County,
William E. Davis, Judge
Case No. 042011CF000498CFAXMX

Eric Pinkard, Capital Collateral Regional Counsel, and Julissa R. Fontán, Assistant Capital Collateral Regional Counsel, and Megan Montagno, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

for Appellant

Ashley Moody, Attorney General, Tallahassee, Florida, and Christina Z. Pacheco, Senior Assistant Attorney General, Tampa, Florida,

for Appellee